## FEDERAL TRADE COMMISSION v. FLOTILL PRODUCTS, INC.

No. 20.   Argued October 16, 1967.—Decided December 4, 1967.

*Howard E. Shapiro* argued the cause for petitioner. On the brief were *Solicitor General Marshall, Assistant Attorney General Turner* and *James McI. Henderson.*

*William Simon* argued the cause for respondent.   With him on the brief were *John Bodner, Jr.,* and *Jefferson E. Peyser.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The question in this case is whether an enforceable cease-and-desist order of the Federal Trade Commission requires the concurrence of a majority of the full Commission, or only of a majority of the quorum that participated in the decision to issue the order.

The Commission has five Commissioners, 15 U. S. C. § 41.[1] A full Commission heard oral argument in this case involving a complaint that respondent made payments in lieu of brokerage in violation of § 2 (c) of the Robinson-Patman Act and granted promotional allowances in violation of § 2 (d) of that Act. 15 U. S. C. §§ 13 (c) and (d). Two Commissioners retired before the Commission rendered its decision. Although one vacancy was filled in the interim, only three Commissioners participated in the decision because the new Commissioner, not having heard the oral argument, declined to participate. All three participating Commissioners concurred that respondent granted promotional allowances in violation of § 2 (d). However, only two of the three concurred that respondent also made payments in lieu of brokerage in violation of § 2 (c). On petition for review under 15 U. S. C. §§ 21 (c) and 45 (c), a three-judge panel of the Court of Appeals for the Ninth Circuit enforced the Commission's cease-and-desist order as it related to the § 2 (d) violation but refused to enforce the order, one judge dissenting, as it related to the § 2 (c) violation. In refusing to enforce the § 2 (c) part of the order, the Court of Appeals held that "absent statutory authority or instruction to the

---

[1] The FTC is one of the oldest federal regulatory agencies. Act of September 26, 1914, c. 311, § 1, 38 Stat. 717, as amended, 15 U. S. C. § 41. See generally Cushman, The Independent Regulatory Commissions 177–228 (1941); Henderson, The Federal Trade Commission (1924).

contrary, three members of a five member commission must concur in order to enter a binding order on behalf of the commission." 358 F. 2d 224, 228.[2] On rehearing *en banc* the full court sustained the panel decision five to four. 358 F. 2d, at 234. Because of a conflict with decisions of other courts of appeals, see *Atlantic Refining Co.* v. *FTC,* 344 F. 2d 599 (C. A. 6th Cir.), *LaPeyre* v. *FTC,* 366 F. 2d 117 (C. A. 5th Cir.), we granted certiorari, 386 U. S. 1003. We reverse.

The Federal Trade Commission Act does not specify the number of Commissioners who may constitute a quorum.[3] A quorum of three Commissioners is provided for by a rule of the Commission first promulgated in 1915; in its current version it is Rule 1.7.[4] No challenge

---

[2] The FTC had denied a petition for reconsideration filed by respondent urging, among other things, the invalidity of the § 2 (c) order on this ground. See 1963–1965 CCH Trade Reg. Rep. Transfer Binder ¶ 17,046.

[3] We do not regard the provision in 15 U. S. C. § 41 for the exercise of powers by "the remaining commissioners" in the case of "a vacancy" as regulating the matter of a quorum. In contrast, except for the 1934 Act creating the Securities and Exchange Commission, 15 U. S. C. § 78d, which is also silent, the acts creating other major federal regulatory agencies expressly provide how many members shall constitute a quorum. See, *e. g.,* 42 U. S. C. § 2031 (Atomic Energy Commission); 49 U. S. C. § 1321 (c) (Civil Aeronautics Board); 47 U. S. C. § 154 (h) (Federal Communications Commission); 16 U. S. C. § 792 (Federal Power Commission); 46 U. S. C. § 1111, as amended (Federal Maritime Commission); 49 U. S. C. § 17 (3) (Interstate Commerce Commission); 29 U. S. C. § 153 (b) (National Labor Relations Board); 50 U. S. C. App. § 1217 (b) (Renegotiation Board); 19 U. S. C. § 1330 (c) (United States Tariff Commission).

[4] "A majority of the members of the Commission constitutes a quorum for the transaction of business." Rule 1.7, Procedures and Rules of Practice for the Federal Trade Commission, as amended, 16 CFR § 1.7 (1967) (now § 6 of Statement of Organization of the FTC, 32 Fed. Reg. 8442). Although § 6 superseded Rule 1.7 as of

to the authority of FTC to promulgate Rule 1.7 is made in this case; indeed, the Court of Appeals expressly disclaimed any ". . . doubt as to the validity of the Commission's practice of conducting hearings before less than the full membership," 358 F. 2d, at 230. Before us for review, therefore, is only the holding of the Court of Appeals which follows that disclaimer: "We say only that an order of the Commission must be supported by three members in order to constitute an enforceable order of the FTC. Two of five is too few." *Ibid.*

The rationale of the Court of Appeals was that the FTC could act only on the concurrence of a majority of the full Commission "absent statutory authority or instruction to the contrary." 358 F. 2d, at 228. The court cited no authority affirmatively supporting that proposition; the court simply rejected—on the ground that it is inapplicable to "a statutorily created administrative tribunal like the Federal Trade Commission," 358 F. 2d, at 229—the rule stated by the Court of Customs and Patent Appeals in *Frischer & Co.* v. *Bakelite Corp.,* 39 F. 2d 247, 255, that ". . . in collective bodies other than courts, even though they may exercise judicial

July 1, 1967, it is identical in wording; we shall refer to the ruling as Rule 1.7, as it was cited in the proceedings to date.

In its original version the quorum provision was stated: "Three members of the Commission shall constitute a quorum for the transaction of business." 1 F. T. C. 595 (Rule adopted June 17, 1915). See also Henderson, *supra,* n. 1, at 71: "The case is then set for oral argument before the full Commission (or at least a quorum of three members) . . . ."

Three courts of appeals have expressed approval of the rule. See *Drath* v. *FTC,* 99 U. S. App. D. C. 289, 239 F. 2d 452; *Atlantic Refining Co.* v. *FTC,* 344 F. 2d 599 (C. A. 6th Cir.); *LaPeyre* v. *FTC,* 366 F. 2d 117 (C. A. 5th Cir.). However, both the Fifth and Sixth Circuit decisions erroneously read the rule as providing, of itself, "for decision by the majority of panels of three members." 366 F. 2d, at 122; 344 F. 2d, at 607.

authority, a majority of a quorum is sufficient to perform the function of the body." [5]   Further, the court rejected as "a bare conclusion" the holding of the Court of Appeals for the Sixth Circuit in *Atlantic Refining Co.* v. *FTC, supra,* that a majority of a panel of three Commissioners could act for the Commission.

Insofar as the Court of Appeals' holding implies that the proposition stated by it is the common-law rule, the court was manifestly in error.   The almost universally accepted common-law rule is the precise converse—that is, in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body.[6] Where the enabling statute is silent on the question,

---

[5] The question in *Frischer* was whether the United States Tariff Commission might act on majority vote of a quorum. The enabling act contained nothing on the subject of a quorum.   39 Stat. 795–798. The present statute provides that a majority of the Commissioners constitutes a quorum.   19 U. S. C. § 1330 (c).

[6] See, *e. g., Missouri Pac. R. Co.* v. *Kansas,* 248 U. S. 276 (1919); *United States* v. *Ballin,* 144 U. S. 1 (1892); *Brown* v. *District of Columbia,* 127 U. S. 579 (1888); *Mountain States Tel. & Tel. Co.* v. *People ex rel.,* 68 Colo. 487, 499–500, 190 P. 513, 517–518 (1920); *Martin* v. *Lemon,* 26 Conn. 192 (1857); *Kaiser* v. *Real Estate Comm'n,* 155 A. 2d 715 (D. C. Mun. Ct. App. 1959); *Davidson* v. *State,* —— Ind. ——, 221 N. E. 2d 814 (1966); *Louisville & Jefferson County Planning & Zoning Comm'n* v. *Ogden,* 307 Ky. 362, 210 S. W. 2d 771 (1948); *Codman* v. *Crocker,* 203 Mass. 146, 89 N. E. 177 (1909); *Oakland* v. *Board of Conservation & Dev.,* 98 N. J. L. 806, 122 A. 311 (1923); *Hill* v. *Ponder,* 221 N. C. 58, 62, 19 S. E. 2d 5, 8 (1942); *Slavens* v. *State Bd. of Real Estate Examiners,* 166 Ohio St. 285, 141 N. E. 2d 887 (1957); *Green* v. *Edmondson,* 23 Ohio Dec. 85 (Common Pleas 1912); *Bray* v. *Barry,* 91 R. I. 34, 41–42, 160 A. 2d 577, 581 (1960); *E. C. Olsen Co.* v. *State Tax Comm'n,* 109 Utah 563, 570–571, 168 P. 2d 324, 328 (1946); 80 Harv. L. Rev. 1589–1590 (1967); 42 N. Y. U. L. Rev. 135, 136–138 (1967). See also *Snider* v. *Rinehart,* 18 Colo. 18, 23–24, 31 P. 716, 718 (1892); Constitution, Jefferson's Manual and Rules of the House of Representatives, H. R. Doc. No. 529, 89th Cong., 2d Sess., §§ 52–57, 409, 508–510.

the body is justified in adhering to that common-law rule.

Respondent does not undertake to support the Court of Appeals' proposition as stated. Rather respondent concedes that the common-law rule is as we have stated it to be but argues that an exception allegedly recognized at common law in the case of courts should be applied to an agency like the FTC exercising quasi-judicial functions; respondent cites the statement in *Frischer, supra,* at 255, that "[w]here courts are concerned, it has been uniformly held, so far as we can ascertain, that a clear majority of all the legally constituted members thereof shall concur or no valid judgment may be entered except such as may follow no decision." But even on the doubtful premise that there is an exception in the case of courts,[7] *Frischer* itself recognized, as we have seen, that

---

[7] The authorities cited in *Frischer* as supporting the exception fail with one exception to do so. Four of the decisions cited dealt simply with the rule in cases where a court is equally divided in its vote. *Madlem's Appeal,* 103 Pa. 584 (1883); *Putnam* v. *Rees,* 12 Ohio 21 (1843); *Northern R. Co.* v. *Concord R. Co.,* 50 N. H. 166 (1870); *Ayres* v. *Bensley,* 32 Cal. 632 (1867). Another, in addition to dealing with the question of an equally divided court, involved a constitutional provision for the concurrence of a majority of the judges *sitting. Mugge* v. *Tate, Jones & Co.,* 51 Fla. 255, 41 So. 603 (1906). The others are likewise not in point. *Deglow* v. *Kruse,* 57 Ohio St. 434, 49 N. E. 477 (1898) (two of three constitutes quorum, both must concur); *Denver & R. G. R. Co.* v. *Burchard,* 35 Colo. 539, 558, 86 P. 749, 755 (1906) (constitutional requirement that three of seven judges concur). The whole of the court's discussion in the only decision in point, *Johnson* v. *State,* 1 Ga. 271 (1846), was "[t]he law, organizing the Inferior Court, constitutes five justices the court. We hold the concurrence of a majority of the whole number necessary to the validity of their action." *Id.,* at 274. No authority was cited for this holding.

In addition, respondent cites *Paine* v. *Foster,* 9 Okla. 213, 53 P. 109 (1896), 9 Okla. 257, 59 P. 252 (1899). Its holding was, however, predicated on a *statutory* requirement that three judges of a

the exception does not apply to administrative agencies with quasi-judicial functions. *Ibid.*[8] It follows that the FTC is not inhibited from following the common-law rule unless Congress has declared otherwise. Since that declaration is not expressed in the Trade Commission Act, our task is narrowed to determining whether it may be read in by implication.

The Court of Appeals' opinion may be read as having found an implicit contrary declaration because Congress wrote the common-law rule into later statutes creating other agencies: " . . . when Congress wanted to authorize the exercise of the powers of an administrative body by less than the full body in other situations, it did not lack the words to do so expressly. Cf. National Labor Relations Board, 29 U. S. C. § 153 (b); Interstate Commerce Commission, 49 U. S. C. § 17 (1) [*sic*]; Federal Power Commission, 16 U. S. C. § 792," 358 F. 2d, at 229.[9] How-

---

five-judge court must concur in order to reverse a lower court judgment. See 9 Okla. 257, 259, 260, 60 P. 24 (dissenting opinion).

Congress has prescribed a quorum of six Justices for this Court but has not provided how many of the quorum can act for the Court. 28 U. S. C. § 1. Congress has, however, dealt expressly with the latter matter in the statutes concerning the courts of appeals, 28 U. S. C. § 46 (d); the Court of Claims, 28 U. S. C. § 175 (f) (1964 ed., Supp. II); and the Court of Customs and Patent Appeals, 28 U. S. C. § 215.

[8] Accord, *Martin* v. *Lemon; Kaiser* v. *Real Estate Comm'n; Louisville & Jefferson County Planning & Zoning Comm'n* v. *Ogden; Oakland* v. *Board of Conservation & Dev.; Slavens* v. *State Bd. of Real Estate Examiners; Bray* v. *Barry; E. C. Olsen Co.* v. *State Tax Comm'n,* all *supra,* n. 6.

[9] In fact, of the three agencies cited only the ICC and NLRB have express authority to act through a majority of a quorum; the FPC statute simply stipulates that three of five commissioners constitute a quorum, a statutory equivalent of the FTC rule sanctioned by the Court of Appeals.

The Atomic Energy Commission, 42 U. S. C. § 2031, and the Renegotiation Board, 50 U. S. C. App. § 1217 (b), also are expressly

ever, in another statute, reorganizing the Federal Maritime Commission, Congress enacted not the common-law rule but a unanimous concurrence provision, Reorganization Plan No. 7 of 1961, 75 Stat. 840; the reasoning of the Court of Appeals thus would equally justify an inference that Congress sanctioned the FTC's adherence to the common-law rule, since Congress has not lacked the words to *abrogate* such a practice expressly. This diversity in congressional treatment of the problem clearly forecloses reliance upon a particular choice in one statute as the basis for an inference of a contrary choice in another which says nothing on the matter.

The Court of Appeals seems also to have been of the view that there is a basis for inferring a contrary

---

authorized to act on the majority vote of a quorum. The Federal Maritime Commission, 46 U. S. C. § 1111, as amended by Reorganization Plan No. 7 of 1961, on the other hand may act only on the unanimous vote of a quorum. Like the act creating the FTC, the acts creating the Civil Aeronautics Board, 49 U. S. C. § 1321 (c), the Federal Communications Commission, 47 U. S. C. § 154 (h), the Federal Power Commission, 16 U. S. C. § 792, the Securities and Exchange Commission, 15 U. S. C. § 78d, and the Tariff Commission, 19 U. S. C. § 1330 (c), say nothing on the subject. These latter agencies nonetheless act on the majority vote of a quorum and in the cases of the CAB, the FCC, the SEC, and the Tariff Commission, the practice has been judicially approved. *Braniff Airways, Inc.* v. *CAB,* —— U. S. App. D. C. ——, ——, 379 F. 2d 453, 460 (dictum); *WIBC, Inc.* v. *FCC,* 104 U. S. App. D. C. 126, 128, 259 F. 2d 941, 943 (dictum); *Gearhart & Otis, Inc.* v. *SEC,* 121 U. S. App. D. C. 186, 189, 348 F. 2d 798, 801 (dictum); *Frischer & Co.* v. *Bakelite Corp., supra* (Tariff Commission). In the case of the FTC, the practice has been judicially approved in *Atlantic Refining Co.* v. *FTC, supra,* and *LaPeyre* v. *FTC, supra.* The earliest FTC decision noting the practice is apparently *Luria Bros.,* 62 F. T. C. 243, 646, 655, decided in 1963. The first court challenge to the practice seems to have been that in 1965 in *Atlantic Refining Co.* v. *FTC, supra.* Cf. *Forster Mfg. Co.* v. *FTC,* 361 F. 2d 340 (C. A. 1st Cir.). See generally 35 Geo. Wash. L. Rev. 398 (1966); 80 Harv. L. Rev. 1589 (1967).

declaration from within the four corners of the Trade Commission Act itself. "[I]t is difficult to believe that Congress conceived of the five-member FTC with its politically balanced make-up, permitting two of its members to speak for the Commission, and failed to specifically provide enabling legislation." 358 F. 2d, at 229. This argument stresses the structural characteristics of the Commission—that it is a multi-membered body whose members serve long, staggered terms, and no more than three of whom may belong to the same political party. But the argument fails to take into account the fact that these features are common to almost all federal regulatory agencies, whose enabling acts, where they deal at all with the question of how many of a quorum may act for the agency, deal with it diversely. Nothing in the structure of the FTC, therefore, commands the inference that Congress intended to restrict the Commission to voting requirements not normally imposed on or adhered to by similarly structured agencies.

Respondent's final argument is that there is a basis for the inference in the action of Congress in 1961 in not disapproving the Reorganization Plan for the Commission submitted by President Kennedy.[10] Under this plan the FTC was granted "authority to delegate, by published order or rule, any of its functions to a division of the Commission, an individual Commissioner, a hearing examiner, or an employee or employee board, including functions with respect to hearing, determining, ordering, certifying, reporting or otherwise acting as to any work, business, or matter . . . ." The plan further pro-

---

[10] Reorganization Plan No. 4 of 1961, 75 Stat. 837, 15 U. S. C. § 41. Under the Reorganization Act, 5 U. S. C. §§ 133z–1 to 133z–15, the plan became operative when not disapproved by Congress within 60 days of its submission by the President. Resolutions to disapprove Plan No. 4 failed to pass in both the House and the Senate. 107 Cong. Rec. 10844–10856 (House); *id.*, at 11721–11740 (Senate).

vided that "the Commission shall retain a discretionary right to review the action of any such division of the Commission, individual Commissioner . . ." and that "the vote of a majority of the Commission less one member thereof shall be sufficient to bring any such action before the Commission for review." Reorganization Plan No. 4, §§ 1 (a), (b). The Commission did not purport to act pursuant to Plan No. 4 in this proceeding. Nevertheless, respondent argues that the provision assuring a minority of the Commission a means to compel review by the full Commission is a congressional expression that Commission action shall be valid only when concurred in by a majority of the full membership. This argument is not persuasive, however. The provisions of Plan No. 4 were common to most of the reorganization plans submitted for other agencies at or about the same time.[11] As we have noted, the enabling acts creating those agencies treat differently the problem of the number of a quorum authorized to act for the agency, which makes it highly improbable that the similarly phrased review procedures set forth in the plans manifest the implicit principle for which respondent contends. Indeed, it is quite clear—both from the language of the plans and the discussions in Congress—that Plan No. 4 and those like it were concerned with establishing the authority and procedure for *delegation* of functions so as to enable the respective agencies to operate more efficiently.[12] There can be little question of the desirability of the FTC's

---

[11] See Plan No. 1, H. R. Doc. No. 146, 87th Cong., 1st Sess. (1961) (SEC); Plan No. 2, H. R. Doc. No. 147 (FCC); Plan No. 3, H. R. Doc. No. 152 (CAB); Plan No. 4, H. R. Doc. No. 159 (FTC); Plan No. 5, H. R. Doc. No. 172 (NLRB); Plan No. 7, H. R. Doc. No. 187 (FMC). Plans 1, 2, and 5 were disapproved by Congress, 107 Cong. Rec. 10463 (No. 2); *id.*, at 11003 (No. 1); *id.*, at 13078 (No. 5). Plans 3, 4, and 7 became effective. See 75 Stat. 837, 840.

[12] See nn. 10–11, *supra.*

judicious use of this authority, but the case before us is not one in which there was a delegation. This was a proceeding originally heard by a full Commission and the problem of a quorum decision arose only when fortuitous circumstances reduced to three the number of Commissioners available to render a decision. Clearly, it is not a decision covered by the 1961 Plan.

The inconsistency in congressional treatment of quorum voting—sometimes allowing agency action on the concurrence of a majority of the quorum, in other cases requiring unanimous concurrence, and in several statutes saying nothing at all—refutes any suggestion that Congress has regarded the problem to be such as to justify a single rule for federal regulatory agencies. Surely, if Congress at any time has regarded the case of the FTC as specially calling for unanimity in quorum voting, we might expect that Congress would have at some time addressed itself to the question during the more than half century of the Commission's existence.[13] Thus, if any conclusion is to be drawn, it is that Congress has

---

[13] It is true that the Commission's first "official" acknowledgment of its practice of rendering two-to-one decisions apparently did not come until 1963. See *Luria Bros., supra,* n. 9. Nevertheless, from the beginning the Commission has periodically had unfilled vacancies for significant lengths of time, vacancies which Congress of course had to know about. Thus between June 1, 1918, and January 16, 1919, there were two simultaneous vacancies; and there have been several single vacancies of some duration—*e. g.,* September 1921 to June 1922, July 1934 to August 1935, October 1949 to October 1950. If, as respondent suggests, the prospect of the Commission acting through the split decision of three Commissioners should be so inconsistent with the nature of the Commission, it is indeed strange that Congressmen conversant with rules of parliamentary procedure governing voting, see Jefferson's Manual, *supra,* n. 6, as well as the methodology of judicial decision making should not in all these years have taken steps to prevent a Commission—reduced to three by a double vacancy or by a single vacancy plus an abstention—from rendering such a decision.

been and is content to acquiesce in the Commission's practice of following the long-established common-law rule.

We therefore reverse the judgment of the Court of Appeals insofar as the matter of the Commission's § 2 (c) order was "remanded to the FTC for further proceedings to determine whether a majority of the Commission join in the section 2 (c) findings," and remand to that court with direction to proceed to judgment on the merits of respondent's petition to review and set aside that order.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.