# Commencement of the United States Commission on Civil Rights

The United States Civil Rights Commission may commence its duties as soon as the statutory quorum of five members has been appointed.

The President may appoint the Chairman, Vice Chairman, and Staff Director prior to the appointment of all eight members of the Commission. Such appointments will be effective when a majority of the Commissioners then in office concurs, provided that at least five members have been appointed.

December 7, 1983

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This responds to the request for the advice of this Office concerning several issues relating to the commencement of the new duties of the United States Commission on Civil Rights. Specifically, you have asked whether the Commission may begin to exercise its statutory responsibilities prior to the time that all eight members have been appointed. In addition, you have asked whether the President may designate a Chairman, Vice Chairman, and Staff Director for the Commission (which appointments require the concurrence of a majority of the Commission's members) prior to the time that all eight members are appointed. In brief, our conclusions are as follows: (1) the Commission may begin to take action in accordance with its statutory mandate as soon as the statutorily prescribed quorum of five members has been appointed; and (2) although the issue with respect to appointment of the Chairman, Vice Chairman, and Staff Director is less clear, we believe that the President may make these designations as soon as he pleases and that the appointment will be effective as soon as he has the concurrence of a majority of the Commissioners then in office, as long as at least five members have been appointed.

Congress recently adopted H.R. 2230, the United States Commission on Civil Rights Act of 1983. Pub. L. No. 98–183, 97 Stat. 1301 (1983). This bill creates a new Commission on Civil Rights with an expanded membership of eight Commissioners. The new Commission will exercise the same investigative and informative powers that were exercised by the previous Commission on Civil Rights. The appointment procedure for the new Commission has been changed, however, so that four members will be appointed by the President, two by the President *pro tempore* of the Senate, and two by the Speaker of the

177

House of Representatives. Because the Commission is a new creation, with a new procedure for appointment of its members, new appointments must be made in order for the new Commission to begin functioning.

1. The first question you have asked is whether the initial meeting of the Commission may be convened and operation of the Commission may commence prior to the time that all members of the Commission have been appointed. Section 2(f) of the bill specifically states that "five members of the Commission shall constitute a quorum." The Supreme Court has held that a majority of a quorum may act for a collective body in the absence of a statutory provision to the contrary. *FCC* v. *Flotill Products,* 389 U.S. 179, 183 (1967). Under this rule, federal agencies have frequently operated with vacancies in their membership as long as the statutory quorum is observed. In addition, this Office has consistently concluded that a federal agency or commission may act as long as the prescribed quorum is present. *See, e.g.,* "Federally Chartered Corporations — National Consumer Cooperative Bank," 3 Op. O.L.C. 311 (1979). In the case of the new Commission on Civil Rights, the statutorily prescribed quorum is five. Therefore, the Commission may begin to undertake its responsibilities as soon as five members have been appointed and have taken office.

2. The second question raised with respect to the new Commission is whether the President may designate the Chairman and Vice Chairman and appoint the Staff Director prior to the appointment of all eight members of the Commission. Section 2(c) of the bill states:

> The President shall designate a Chairman and a Vice Chairman
> from among the Commission's members with the concurrence
> of a majority of the Commission's members.

97 Stat. 1301. Section 6(a)(1) states:

> There shall be a full-time staff director for the Commission who
> shall be appointed by the President with the concurrence of a
> majority of the Commission.

97 Stat. 1305. These provisions raise the issue whether a majority of the Commission's members means a majority of the statutorily prescribed members (*i.e.,* five) or simply a majority of the members holding office at that time, as long as at least five have been appointed.[1]

---

[1] The two provisions differ slightly in their descriptions of the concurrence required. Section 2(c) requires concurrence by a "majority of the Commission's members," while § 6(a)(1) uses the term a "majority of the Commission." There is no indication in the text or purpose of the statute or in the legislative history that Congress intended the two provisions to have different meanings. Therefore, we do not ascribe any legal significance to this minor difference, and we believe that the two phrases should be interpreted in the same manner. We also note that § 2(c) uses the term "designate," while § 6(a)(1) uses the term "appointed." We believe that this difference in terminology is due to the fact that the Chairman is selected from among members already appointed to the Commission, while the Staff Director is appointed to the position from a different job. Therefore, this difference in terminology also has no legal significance with respect to the issues considered herein.

Although a good argument could be made that Congress intended the President to obtain concurrence of a majority of the statutorily prescribed members, we believe that on balance, the correct reading of the statute is that concurrence may be obtained from a majority of the Commissioners holding office at the time of the designation or appointment.[2] The language of the concurrence provisions gives no indication that Congress intended to depart from the otherwise clear quorum requirement of § 2(f), which permits the Commission to act when at least five members are present. In addition, § 2(e) states in part that "any vacancy in the Commission shall not affect its powers." 97 Stat. 1302. This provision suggests that a quorum is all that is required in order to exercise the concurrence necessary to appoint the Chairman, Vice Chairman, and Staff Director. Finally, when Congress intended a majority of the statutorily prescribed Commissioners to take an action, as in the quorum requirement, it specifically used the number five to indicate that point. If Congress had intended to require concurrence by five Commissioners, it could easily have so stated. All of these factors lead us to the conclusion that a majority of the current members is sufficient to provide the necessary concurrence, provided a quorum is present.

This conclusion is supported by several court of appeals cases concerning a similarly worded provision in the Interstate Commerce Act. *See Michigan Dep't of Transportation* v. *ICC*, 698 F.2d 277 (6th Cir. 1983); *American Trucking Ass'n, Inc.* v. *United States*, 642 F.2d 916 (5th Cir. 1981); *Union Pacific R.R. Co.* v. *United States*, 637 F.2d 764 (10th Cir. 1981); *Assure Competitive Transp., Inc.* v. *United States*, 629 F.2d 467 (7th Cir. 1980), *cert. denied*, 449 U.S. 1124 (1981). In these cases the courts concluded that a statutory provision that "a majority of the Interstate Commerce Commission . . . constitutes a quorum" meant that a quorum required merely "a majority of the Commissioners actually in office," and not a majority of the statutorily prescribed Commissioners. *Assure Competitive*, 629 F.2d at 473. In so ruling, the courts relied on a vacancy clause similar to § 2(e) quoted above. Given the similarity of the vacancy clauses and the additional similarity between the language of the ICC's quorum clause and the language of the concurrence requirements in the Civil Rights Commission statute, these cases provide strong support for the conclusion that the required concurrence may be obtained from a majority of the members currently appointed, as long as at least five members have been appointed.

ROBERT B. SHANKS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] Needless to say, the safest course would be to obtain concurrence from a majority of the statutorily prescribed members. If five members of the new Commission concurred in the appointments at issue, there would be no question about their validity.