**David L. O'GORMAN, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, Gump Glass Company, and Liberty Mutual Fire Insurance Company, Respondents.**

**No. 90CA1781.**

Colorado Court of Appeals, Div. C.

Oct. 10, 1991.

As Amended Feb. 20, 1992.

Certiorari Granted Feb. 24, 1992.

Brauer, Beuscher, Valentine, Goldhammer & Kelman, P.C., Joseph M. Goldhammer, Ellen M. Kelman, Denver, for petitioner.

Zarlengo, Mott, Zarlengo and Winbourn, Richard P. Myers, Denver, for respondents Gump Glass Co. and Liberty Mut. Fire Ins. Co.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office of State of Colo.

Sarney, Trattler & Waitkus, P.C., William J. Macdonald, Terry D. Gordon, Denver, amicus curiae Colorado Trial Lawyers Ass'n.

Opinion by Judge RULAND.

Claimant, David L. O'Gorman, petitioned this court for review of an order of the Industrial Claim Appeals Panel. This order remanded his claim to the Administrative Law Judge (ALJ) for additional findings. Citing *Natkin & Co. v. Eubanks*, 775 P.2d 88 (Colo.App.1989), the Panel moved to dismiss the petition on the basis that its order was not final for purposes of appellate review. In response to the motion, claimant asserted that the Panel lacked jurisdiction to enter its remand order because only two Panel members signed it. This court then ordered the parties to submit briefs on the jurisdictional issue. Having considered those briefs, we conclude that the Panel had jurisdiction, and therefore, we dismiss the petition without prejudice.

Prior to the enactment of legislation creating the Panel, administrative review of workers' compensation and unemployment compensation claims was conducted by a three-member Industrial Commission. Section 8-1-102(1), C.R.S. The General Assembly authorized a majority of the members to address each review. Section 8-1-102(2), C.R.S.

When legislation was initially adopted creating the Panel for review of workers' compensation and unemployment compensation claims, appointment of three members was authorized. *See* § 8-1-102, C.R.S. (1986 Repl.Vol. 3B). The statute was silent as to the number of members required to reach a decision in each case.

However, when two members of the Panel agreed upon disposition of any particular case, the order was signed by those Panel members only.

In 1989, the statute establishing the Panel was amended to provide:

"There is hereby created in the office of the executive director of the department of labor and employment the industrial claim appeals office, which *may* consist of five industrial claim appeals examiners, who shall be appointed to serve on the industrial claim appeals panel by the executive director.... *Each* industrial claim appeals examiner shall exercise *his* powers and perform *his* duties and functions in the industrial claim appeals office within the office of the executive director of the department as if transferred thereto by a **type 2** transfer as such transfer is defined in the 'Administrative Organization Act of 1968', article 1 of title 24, C.R.S." Section 8–1–102(1), C.R.S. (1990 Cum.Supp). (emphasis added)

However, only one additional member was appointed; thus, the Panel currently consists of four members.

The 1989 amendment also included an addition to the Unemployment Compensation Act which authorized two Panel members to resolve the issues in each case. If those members could not agree, a third member was required to review and resolve the case. *See* § 8–74–110, C.R.S. (1990 Cum.Supp.). However, the amendment was silent as to the number of members required to resolve workers' compensation cases.

Relying upon § 2–4–110, C.R.S. (1980 Repl.Vol. 1B), claimant contends that at least three members of the Panel must address the issues in each workers' compensation case before a valid order may be entered. That statute provides:

"A grant of authority to three or more persons as a public body confers the authority upon a majority of the number of members fixed by statute."

On the other hand, the Panel and respondent, Liberty Mutual Fire Insurance Co., both contend that only one member is required to enter a valid order. Therefore, an order signed by two members is also valid. We conclude that the statute is ambiguous because it fails to specify the number of members required to reach a decision in workers' compensation cases. In resolving that ambiguity, we hold that an order signed by two members is valid.

▪ In construing a statute, our task is to ascertain and give effect to the intent of the General Assembly. In conducting that analysis, we must assume that the General Assembly was cognizant of the existing procedure adopted by an administrative agency in fulfilling its delegated duties. We must also read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all parts.

▪ If, as here, a statute is ambiguous, we may determine the intention of the General Assembly by considering the statute's legislative history, the state of the law prior to the legislative enactment, the problem addressed by the legislation, and the statutory remedy created to cure the problem. *See* § 2–4–203, C.R.S. (1980 Repl.Vol. 1B); *Charnes v. Boom,* 766 P.2d 665 (Colo. 1988).

▪ A primary and important resource for determining legislative intent is the discussion which takes place in hearings before House and Senate Committees concerning the amendment. *See City of Aspen v. Meserole,* 803 P.2d 950 (Colo.1990).

▪ Here, the legislative hearings on the 1989 amendment demonstrate that it was intended to address the heavy caseload and the delay in resolving unemployment compensation cases that then existed. Specifically, because prior legislation mandated a decision from the Panel in workers' compensation cases within 60 days, § 8–43–301(8) & (11), C.R.S. (1990 Cum.Supp.), resolution of unemployment cases was increasingly delayed.

The legislative history evidenced by evaluation of the financial impact of the amendment further confirms that the addition of Panel members was for the purpose of

addressing the unemployment cases. Indeed, because the objective was prompt resolution of unemployment claims, the sponsoring legislators contemplated that federal funding would be available to finance a significant part of the cost for the additional Panel members.

With reference to how the 1989 amendment would modify the existing procedure, Representative Masson explained in Committee hearings that the bill simply increased the number of Panel members. Moreover, it was stated that the Panel would operate in the same manner as before. She further advised the Committee that two members would decide each case in order to avoid an arbitrary decision by only one member. *See* Tape Recording of Testimony before House Agriculture, Livestock and Natural Resources Committee concerning H.B. 1313 (February 8, 1989, 57th General Assembly) (discussion between Representative Masson and Representative Fish).

In that same hearing, the executive director of the Department of Labor and Employment explained that the purpose of the amendment was to address unemployment cases. He stated that two members were required to address workers' compensation cases because of the 60-day time limitation. *See* Tape Recording of Testimony before House Agriculture, Livestock and Natural Resources Committee concerning H.B. 1313 (February 8, 1989, 57th General Assembly) (testimony of John Donlon, Executive Director of Department of Labor and Employment).

In the hearing before the Senate Committee on Business Affairs and Labor, Senator Traylor presented the amendment to the Committee and confirmed that its purpose was to address the delay in resolving unemployment cases, that a decision by only two members was required, and that, unless those two members disagreed, it would be unnecessary for a third member to review the case. *See* Tape Recording of Testimony before Senate Business Affairs and Labor Committee concerning H.B. 1313 (March 6, 1989, 57th General Assembly) (testimony of Senator Traylor).

Accordingly, we conclude that the legislative intent in adopting the 1989 amendment is clear. No change to existing procedure for handling workers' compensation by two Panel members was contemplated. Also, the appointment of an additional Panel member or members was authorized only to address the unemployment case backlog. Further, to ensure that decisions in those cases were not arbitrary, two Panel members were directed to review each case and, unless they disagreed, review by a third member was not required.

With this legislative intent before us, we return to claimant's contention predicated upon § 2–4–110 and the requirement that a "majority" of the members of a "public body" are required to reach a decision. Even if we assume that § 2–4–110 may be construed to apply to state agencies, we conclude that it does not govern resolution of the issue before us.

In § 2–4–203, C.R.S. (1980 Repl.Vol. 1B), we are instructed that, in construing ambiguous statutes, we must consider the consequences of any particular interpretation of a statute as well as the administrative construction thereof. With reference to statutes generally, the General Assembly has stated that an unreasonable result is never intended. Section 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B). And if, as here, the statute is silent as to the issue before us, precedent dictates that our decision is to be governed by legislative intent. *See Williams v. White Mountain Construction Co.,* 749 P.2d 423 (Colo.1988).

Adherence to claimant's contention in this case would violate each of these canons of statutory construction. Specifically, a requirement that three members of the Panel address each workers' compensation case would frustrate the purpose of the 1989 amendment. The time and effort of the third member would be diverted from the specific objective of the legislation to reduce the unemployment case backlog. We would also ignore the interpretation of the amendment by the Panel which is charged with the duty of carrying out the intent of the statute. *See Lucero v. Industrial Commission,* 732 P.2d 642 (Colo.

1987). Finally, and most important, the interpretation urged by claimant would call into question the validity of all the Panel orders entered by two members in workers' compensation cases following enactment of the amendment. We are confident that this result was not contemplated or intended by the General Assembly in its effort to reduce the unemployment case backlog.

Hence, we conclude that, insofar as the 1989 amendment increased the number of Panel members, it was not intended and did not in fact modify the procedure for addressing review of workers' compensation cases. Therefore, orders in those cases signed by two members are authorized and valid.

Accordingly, since the Panel's order was not final for purposes of appellate review, claimant's petition for review is dismissed without prejudice. *See Natkin & Co. v. Eubanks, supra.*

METZGER, J., concurs.

CRISWELL, J., dissents.

Judge CRISWELL dissenting:

I do not agree that the General Assembly's action, either in 1986 or in 1989, was intended to change the long-standing rule that the public body charged with administering Colorado's workers' compensation program is required to act by a majority of its members. Hence, I respectfully dissent.

Before 1986, there existed the Colorado Industrial Commission, composed of three members. Section 8–1–102(1), C.R.S. The Industrial Commission was given a number of duties and responsibilities. Among other things, the authorizing statute provided that:

"[T]he *commission* has the duty and power to

. . . .

(f) Hear as an appellate board all appeals from any order, award, or decision of the director...." Section 8–1–107(1), C.R.S. (emphasis supplied).

As the majority notes, the Industrial Commission was replaced in 1986 by the Industrial Claim Appeals Office (Panel), which then consisted of "three industrial appeals examiners," who are appointed *"to serve on* the industrial claim appeals panel." Section 8–1–102(1), C.R.S. (1986 Repl. Vol. 3B) (emphasis supplied).

As was true of the Industrial Commission, however, it is the "industrial claim appeals *panel* [that] has the duty and the power to conduct administrative appellate review of any order entered" with respect to unemployment compensation or workers' compensation claims. Section 8–1–102(2), C.R.S. (1986 Repl.Vol. 3B) (emphasis supplied). Nowhere in the statutes is any individual examiner given any such power.

As the majority also notes, the statute governing the Industrial Commission specifically provided that a "majority" of three commissioners would "constitute a quorum to transact business and exercise the powers conferred by law." Section 8–1–102(2), C.R.S. And, no such specific injunction is contained within the statute that created the Panel.

For several reasons, however, there is little significance to be placed upon this omission.

First, the statutory requirement for majority action was placed in the original Industrial Commission Act, when it was adopted in 1915. Colo.Sess.Laws 1915, ch. 180, § 5 at 565. At that time, there was no general statute requiring that action be by a majority of the members of a "public body." Such a statute, which is now codified as § 2–4–110, C.R.S. (1980 Repl.Vol. 8B), was not enacted until 1973. Colo.Sess. Laws 1973, ch. 406, § 135–1–110 at 1423.

If we assume that the General Assembly intended that this latter statute was to apply to all public bodies, including the Panel, there was no need for it to repeat a similar requirement when it created the Panel in 1986. And, nothing that was presented in the hearings upon the bill that resulted in the 1986 act is inconsistent with this conclusion.

However, even if this 1973 statute could be said to be not applicable to the Panel, it

would mean, simply, that there was, until 1989, no statute setting forth the number of Panel members required to exercise the "duty and power" of appellate review that had been delegated to the Panel, itself. Under such circumstances, "[t]he almost universally accepted common law rule ... [is that] a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." *Federal Trade Commission v. Flotill Products, Inc.*, 389 U.S. 179, 88 S.Ct. 401, 19 L.Ed.2d 398 (1967) (three of five members of commission must sit as quasi-judicial body, but only two of the three member quorum must concur). See *Mountain States Telephone & Telegraph Co. v. People ex rel. Wilson*, 68 Colo. 487, 190 P. 513 (1920) (majority of supreme court members are required to participate in a case, but only majority of those sitting need concur in decision).

Thus, whether § 2–4–110 or the common law is looked to, the result is the same. In either case, so long as the Panel consisted of three members, at least two (a majority) were required to participate in hearing appeals in both unemployment compensation and workers' compensation cases.

I must emphasize that this record contains absolutely *no* evidence of the practice of the Panel, or the reason for such practice, between the date of its creation and the date that its membership was increased from three to four. Nevertheless, if we may take judicial notice of our own experience with the Panel, it may be said that the three-member Panel *never* acted, or attempted to act, by *less* than a majority of its entire membership during that time. During this period, at least two members of the Panel always participated in the Panel's appellate review of any case.

This brings us, then, to the 1989 legislation, which authorized the Panel's membership to be increased from three to a maximum of five. Section 8–1–102(1), C.R.S. (1990 Cum.Supp.). At the same time that this statute was adopted, § 8–74–110, C.R.S. (1990 Cum.Supp.), which is a part of the *unemployment compensation* statutes, was amended so as to provide that, when reviewing unemployment compensation claims, two appeals examiners can adopt a final order, except that, if they disagree, a third is required also to act.

This latter legislative amendment is notable for at least two reasons.

First, the fact that the General Assembly felt it necessary to adopt such a statute constitutes legislative recognition that, without its adoption, the Panel could act only upon the participation of a majority of its members. Indeed, if the General Assembly had not been of this view, there would have been no need to amend the unemployment compensation statutes to allow less than a majority of the appeals examiners to act upon unemployment compensation claims.

Second, the General Assembly did *not* amend the workers' compensation statute to grant the Panel similar authority when acting on workers' compensation appeals. Hence, since it took deliberative action to rescind the majority participation requirement for unemployment compensation claims, I find it difficult to believe that the General Assembly simply *overlooked* a necessary amendment to the workers' compensation statute. Indeed, I am unwilling to attribute to this public body an intent to repeal a requirement that had been in existence for nearly 75 years without a clear expression of that intent by a majority of its members. Rather, I conclude that the General Assembly intended that the Panel would employ different procedures, depending upon whether it was acting to review an unemployment compensation claim or a workers' compensation claim.

Certainly, the General Assembly has required differing procedures for the Panel in the past. See *Clark v. Colorado State University*, 762 P.2d 698 (Colo.App.1988) (APA standard of review applicable to Panel's review of unemployment compensation appeals); *May D & F v. Industrial Claim Appeals Office*, 752 P.2d 589 (Colo.App. 1988) (APA standard not applicable on appeal of workers' compensation claims). Hence, there can be no presumption that it intended the same procedure to be used in this instance.

Finally, I agree with the majority that the legislative history makes clear that the reason for the 1989 amendment increasing the number of examiners was to allow the Panel to deal with unemployment compensation claims on a more expeditious basis. And, I also agree that the amendment to the unemployment compensation statute, allowing only two members to act upon such claims, was reasonably designed to achieve this purpose.

The 1989 amendment, however, contemplated a total of *five*, not four, examiners. On its face, therefore, it had the effect of authorizing *two* additional examiners and, at the same time, it authorized only *two* examiners to act on unemployment compensation claims. From the very terms of the amendment, without reference to any extrinsic materials, the intent seems clear to allow the other three examiners, who would continue to constitute a majority of the new five-member board, to continue to deal with workers' compensation appeals.

Further, none of the testimony before the legislative committees upon the 1989 amendment, fairly read, can be said to be inconsistent with this conclusion. The testimony of the executive director before the House committee, referred to by the majority, was simply an explanation of how the Panel was *then* required to operate because there were then only two Panel members, a vacancy in that position having recently occurred. Likewise, Senator Traylor's testimony before the Senate committee referred only to unemployment compensation appeals; he did not relate to the procedure that the Panel was to follow in workers' compensation cases.

In short, I cannot agree that the 1989 amendment to a statute applicable only to unemployment compensation appeals can be read as amending the statute dealing with workers' compensation claims. Hence, I would hold that, when considering appeals of the latter claims, a majority of the Panel members must participate. Since the record here demonstrates that a majority did not participate in the appeal under consideration, I would hold that the resulting order is void.

Because the Panel's order of remand must be considered void, no valid order was entered by it within the sixty-day period required by statute. Under such circumstances, the ALJ's order automatically became the order of the Panel. Section 8–43–301(11), C.R.S. (1990 Cum.Supp.). Therefore, I would not dismiss this petition. Rather, I would assert jurisdiction over the cause, but only to the extent, if at all, that petitioner seeks our review of the order of the ALJ.