David L. O'GORMAN, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO, Gump Glass Company, and Liberty Mutual Fire Insurance Company, Respondents.

No. 91SC642.

Supreme Court of Colorado,
En Banc.

Sept. 21, 1992.

Rehearing Denied Oct. 13, 1992.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Joseph M. Goldhammer, Ellen M. Kelman, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Zarlengo, Mott, Zarlengo & Winbourn, Richard P. Myers, Denver, for respondents Gump Glass and Liberty Mut. Ins. Co.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *O'Gorman v. Industrial Claim Appeals Office*, 826 P.2d 390 (Colo.App.1991), which held that the Industrial Claim Appeals Panel (Panel) had jurisdiction to enter an order signed by only two of the four Panel members. We find that section 2–4–110, 1B C.R.S. (1980), which allows the grant of authority to a public body to be conferred on a majority of the members, is applicable here. Since the action of two Panel members exceeded the Panel's statutory authority, we reverse.

I

Due to a back injury suffered in the course of his employment in December

1987, the petitioner, David L. O'Gorman filed a claim against his employer, Gump Glass Company, for employee benefits under the Workmen's Compensation Act of Colorado (the Act), §§ 8–40–101 to 8–54–127, 3B C.R.S. (1986).[1] The insurance carrier for Gump Glass, Liberty Mutual Insurance Company, filed a general admission of liability for medical benefits and for temporary total disability benefits.

A hearing was held before an administrative law judge (ALJ) for the Colorado Department of Labor and Employment, Workers' Compensation Section, to resolve the issues of whether O'Gorman was due benefits for disfigurement and for total permanent disability as a result of his injury. The ALJ ruled that O'Gorman was owed $50 in benefits for disfigurement and that he was permanently totally disabled within the Act's definition of that term. Gump Glass and Liberty Mutual appealed to the Industrial Claim Appeals Office (ICAO).

The Panel found that the ALJ had used the wrong standard for determining permanent total disability and set aside his order, remanding the case to the division of labor for additional findings and a new order on that issue. Although the Panel consisted of four members at the time it entered the remand order, only two members signed it.

Pursuant to section 8–53–119(1), 3B C.R.S. (1986), O'Gorman commenced an action in the court of appeals to vacate the Panel's order of remand.[2] The respondents, ICAO, Gump Glass, and Liberty Mutual moved to dismiss the appeal, asserting that the Panel's order was interlocutory and, therefore, not reviewable. The court of appeals dismissed the case without opinion. O'Gorman filed a petition for rehearing, asserting that the Panel's order of remand was entered without jurisdiction because it was signed by only two members. Consequently, O'Gorman asserted, by operation of section 8–43–301(11), 3B C.R.S. (1992 Supp.), the order of the ALJ became the order of the Panel. Section 8–43–301(11) provides:

> If the panel has failed to enter its order within sixty days of the receipt of the certified record, the order of the director or administrative law judge shall be deemed the order of the panel and final unless, within thirty days after the end of the sixty-day period, the petitioner files an appeal by petition for writ of certiorari with the court of appeals. If the panel has not acted on the sixtieth day, the industrial claim appeals office shall send a written notice to all parties stating that the parties have thirty days after the date of the certificate of mailing of the notice to file such a petition for writ of certiorari.

O'Gorman requested that the court remand the case to the Panel to send a notice to all parties that they have thirty days to file a petition for writ of certiorari in the court of appeals.

In *O'Gorman,* the court concluded that two members of the Panel have authority to enter an order on behalf of the Panel. O'Gorman's petition to review the Panel's order was dismissed on the basis that an order of remand by the Panel setting aside an award of benefits is interlocutory and therefore not reviewable because it neither requires payments by a party nor denies a claimant any benefits. *Natkin & Co. v. Eubanks,* 775 P.2d 88, 89 (Colo.App.1989).

O'Gorman contends that the Panel is authorized to act only through a majority of its members.

---

**1.** On July 1, 1990, this act was renamed the "Workers' Compensation Act of Colorado" and renumbered to encompass §§ 8–40–101 to 8–47–209.

**2.** Section 8–53–119(1), 3B C.R.S. (1986), provides:

> Any person in interest ... being dissatisfied with any final order of the panel, may commence an action in the court of appeals against the industrial claim appeals office as

defendant to modify or vacate any such order on the grounds set forth in section 8–53–120. Section 8–53–120 authorized the court of appeals to set aside a final order only on limited grounds. § 8–53–120, 3B C.R.S. (1986).

In 1990, with the repeal and reenactment of the "Worker's Compensation Act of Colorado," §§ 8–53–119 and –120 were replaced with §§ 8–43–307 and –308, 3B C.R.S. (1992 Supp.). These sections were made applicable to injuries occurring on or after July 1, 1991.

## II

■ The ICAO was created in 1986 as a successor to the Industrial Commission of Colorado. Ch. 64, sec. 3, § 8–1–102(1), 1986 Colo.Sess.Laws 463, 463–64. The original enabling statute provided that the ICAO "shall consist of three industrial claim appeals examiners, who shall be appointed to serve on the industrial claim appeals panel ... [and be authorized to] conduct administrative appellate review of any order [of a hearing officer of the division of labor related to workers' compensation and unemployment compensation benefit claims]...." § 8–1–102, 3B C.R.S. (1986). The statute was subsequently amended to allow discretion in the number of examiners and to authorize a maximum membership of five examiners:

(1) There is hereby created in the office of the executive director of the department of labor and employment the industrial claim appeals office, which *may* consist of *five* industrial claim appeals examiners, who shall be appointed to serve on the industrial claim appeals panel by the executive director pursuant to section 13 of article XII of the state constitution and the laws and rules governing the state personnel system. Each industrial claim appeals examiner shall exercise his powers and perform his duties and functions in the industrial claim appeals office within the office of the executive

director of the department as if transferred thereto by a *type 2* transfer as such transfer is defined in the "Administrative Organization Act of 1968," article 1 of title 24, C.R.S.[3]

Ch. 60, sec. 1, § 8–1–102(1), 1989 Sess.Laws 371 (emphasis added).[4] At the time the Panel ruled on the appeal initiated by Gump Glass and Liberty Mutual, it consisted of four members.

Section 8–1–102(1) directs "each" examiner to "exercise his powers and perform his duties and functions...." Section 2–4–110, 1B C.R.S. (1980), provides: "A grant of authority to three or more persons as a public body confers the authority upon a majority of the number of members fixed by statute." The respondents assert that section 2–4–110 is a statute of general applicability which is overridden by the more specific language of section 8–1–102(1), and that pursuant to section 8–1–102(1), only one appeals examiner is required to enter a valid order. The court of appeals concluded that section 8–1–102(1) "is ambiguous because it fails to specify the number of members required to reach a decision in workers' compensation cases." *O'Gorman*, 826 P.2d at 392. Because it found the statute ambiguous, the court of appeals looked to the legislative history of the statute in an effort to ascertain legislative intent.[5]

---

**3.** Section 24–1–105(2), 10A C.R.S. (1988), provides:

(2) Under this article, a *type 2* transfer means the transferring of all or part of an existing department, institution, or other agency to a principal department established by this article. When all or part of any department, institution, or other agency is transferred to a principal department under a *type 2* transfer, its statutory authority, powers, duties, and functions, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds, including the functions of budgeting purchasing, and planning, are transferred to the principal department.

**4.** In March 1992, section 8–1–102(1) was amended to add the following language at the end of the provision:

Decisions and orders of the industrial claim appeals panel may be made by two appeals examiners. In the event of a disagreement between such two appeals examiners, a third

appeals examiner shall review the case, and the decision and final order of the appeals panel shall reflect the collective decision of all three appeals examiners.

Ch. 231, secs. 1 and 4, 1992 Colo.Sess.Laws 1811, 1811–13. While this amendment resolves the question of the number of panel members necessary to enter an order after March 19, 1992, it does not answer the question of the number necessary prior to this amendment.

**5.** As Judge Criswell points out, the legislative history on the question of the number of members required to reach a valid decision is ambiguous. *See O'Gorman*, 826 P.2d at 396 (Criswell, J., dissenting). We do not find it necessary, however, to address the issue of legislative intent here, as we find no ambiguity in § 8–1–102(1). *McKinney v. Kautzky*, 801 P.2d 508, 509 (Colo.1990) ("If the language in the statute is clear and the intent of the General Assembly may be discerned with reasonable certainty, it is not necessary to resort to other rules of statutory interpretation.").

We do not agree that there is any ambiguity in section 8–1–102(1) respecting the number of Panel members necessary to enter a valid order, nor do we find a conflict between the provisions of sections 8–1–102(1) and 2–4–110. The language in section 8–1–102(1) referring to the duties of each examiner does not lead to the conclusion that only one examiner is necessary for a valid order. Rather, the language merely concerns the position of the examiner and the examiner's duties within the hierarchy of the agency structure. It requires the examiner to exercise his functions in the ICAO within the office of the executive director of the department of labor and employment as if transferred thereto by a *type 2* transfer. Thus, the statute provides that the executive director of the department of labor and employment is the party ultimately responsible for the exercise of the examiners' powers. *See* § 24–1–105, 10A C.R.S. (1988). Nothing in section 8–1–102(1) can be construed, however, to dictate the number of Panel members required to reach a valid decision in workers' compensation cases. Thus, there are no provisions in section 8–1–102(1) that can be understood to contradict the mandate of section 2–4–110 which requires a majority of members of a public body to execute a valid order on behalf of the entity.

■ The ICAO next asserts that it is not a "public body" within the scope of section 2–4–110. Public bodies, it argues, are distinguishable from principal departments established by the Colorado Constitution, art. IV, § 22, and the Administrative Organization Act of 1968, § 24–1–110, 10A C.R.S. (1992 Supp.). The ICAO is part of the department of labor and employment—a principal department created pursuant to article IV, section 22, of the Colorado Constitution. As such, respondents argue, the ICAO is not a public body.

The basis for this distinction is, according to respondents, the fact that at times the legislature has specifically defined the term "public body" in statutory provisions other than section 2–4–110, title 8 (governing workers compensation) and the provisions establishing principal departments. Based on this observation, respondents conclude that the only "public bodies" are those instrumentalities of the state which are created by a statute that specifically defines the term "public body." All statutes which lack such a definition, the argument goes, evince the General Assembly's intent to exempt the instrumentalities created thereunder from the definition of a public body. We find this argument unpersuasive.

The error in respondents' reasoning can most easily be seen by simply examining the manner in which the General Assembly has defined "public body" when it has chosen to do so specifically. Generally speaking, when the term "public body" has been defined, it encompasses state government, local government or political subdivisions, public boards, commissions, authorities, or agencies. *See* § 31–25–103(5), 12B C.R.S. (1986); § 29–15–103(3), 12A C.R.S. (1986); § 32–9–103(11), 13 C.R.S. (1973); § 11–56–103(7), 4B C.R.S. (1992 Supp.). We can find no principled basis, and respondents offer us none, upon which to distinguish the sorts of public bodies referred to when the legislature has specifically defined "public body" in the above statutes from the principal departments created pursuant to the Colorado Constitution. Thus, we find no merit in the argument that principal departments and their constituent agencies are not included within the meaning of the term "public bodies." Consequently, we hold that the ICAO, as an administrative agency, falls within the general definition of a public body which can be derived from examination of these statutory definitions.

Our holding is supported by noting that the title setting board which, like the ICAO, is a statutorily created body with an assigned public function, *see* § 1–40–101(2), 1B C.R.S. (1992 Supp.), is authorized under section 2–4–110 to act by a majority of the board. *See In the Matter of the Title, Ballot Title and Submission Clause, and Summary Concerning Unsafe Workplace Environment,* 830 P.2d 1031, 1036 (Colo.

1992).[6]

The mandate of the Colorado Constitution article IV, section 22, implemented by section 24–1–110, 10A C.R.S. (1992 Supp.), requires "all executive and administrative offices, agencies and instrumentalities of the executive department of the state government and their respective functions, powers and duties, except as otherwise provided by law, [to be] allocated among and within [twenty listed principal departments]." One listed principal department is the department of state, § 24–1–110(1)(a), which is headed by the secretary of state. § 24–1–111(1), 10A C.R.S. (1988). The title setting board is convened by the secretary of state, § 1–40–101(2), 1B C.R.S. (1992 Supp.), and therefore, is a component of the department of state. We do not discern any notable difference between the title setting board and the ICAO which would remove one from the restriction of section 2–4–110 while subjecting the other to such limitation.

We do not find that there is any contradiction between sections 8–1–102(1) and 2–4–110 and we hold that, at the time it entered its order in this case, the Panel was subject to the limitation that it must act through a majority of its members, requiring a vote of three.

### III

■ The court of appeals affirmed its dismissal of O'Gorman's petition for certiorari review after finding that the entry of an order by two Panel members was valid but that the otherwise valid order was not final for purposes of appeal. Having determined that the Panel order was invalid, we address the ICAO's contention that the case should be remanded for reconsideration by three members of the Panel. O'Gorman argues alternatively that, pursuant to section 8–43–301(11), since a valid order of the Panel was not entered within sixty days, the order of the ALJ became the order of the Panel.

---

**6.** Section 1–40–101, 1B C.R.S. (1992 Supp.), states that a majority of the title setting board controls, but in *In re Ballot Title Concerning*

The record is devoid of any reference to the usual practice of the Panel and this is the first case in which an appellate court has considered what number of Panel members is required to enter a valid order. Section 8–43–301(11), 3B C.R.S. (1992 Supp.), requires the Panel to enter its order within sixty days of receipt of the record. The emphasis of section 8–43–301(11) is establishment of time limitations for Panel action so as to promote expedient resolution of workers' compensation claims. The Panel did comply with the statutory time limitations by entering an order within the sixty-day time period, believing that it had authority to act through only two members. Consequently, the Panel acted in accordance with the spirit of section 8–43–301(11), but since we have now found that the Panel must act through at least three members, we reverse the court of appeals with instructions to remand to the Panel for further proceedings.

*Unsafe Workplace Environment,* 830 P.2d at 1036, we specifically recognized that § 2–4–110 is applicable to title setting board actions.