# Reese *v.* State, *ex rel.* Carswell, *et al.*

## *Quo Warranto.*

(Decided June 3, 1913.    Rehearing denied June 30, 1913.
62 South. 847.)

1. *Municipal Corporation; Vacancies; Election; Right to Vote.*—
Under section 1064, Code 1907, as amended by Acts 1909, p. 100, the
president of the City Council to which said section as amended is ap-
plicable, is a member of such council, and entitled to vote at an
election to fill a vacancy in that body.

2. *Same.*—It is within the power of the legislature to confer on
the president of the city council the functions of a member of the
council in every respect, including the right to vote.

3. *Same; Majority.*—Under section 1192, subdivision 7, Code 1907,
a city containing more than 6,000 and less than 20,000 inhabitants
which had been divided into four wards with a council consisting of a
president, and eight councilmen, one of whom had resigned, in an
election to fill the vacancy at which the president and several of the
councilmen were present, it required a majority of the seven council-
men and the president to effect an election, and not a mere majority
of a quorum; hence, where the president did not vote and one candi-
date received four votes and another three, no election was had.

4. *Same; Omission to Vote.*—Where the president of a city council
was present at an election, and was authorized to vote but did not
do so, his failure to vote could not be held as a concurrence with the
majority of the members voting so as to constitute that majority a
majority of the council; his blank ballot should have been considered
as a nullity.

APPEAL from Morgan Circuit Court.

Heard before D. W. SPEAKE.

Quo warranto by the State of Alabama, on the rela-
tion of F. L. Carswell and others, directed to J. E.
Reese, requiring him to show wherein he has right to
usurp and intrude into the office of councilman for ward
No. 1 in the city of New Decatur.   From a decree oust-
ing respondent, he appeals.   Reversed and remanded.

It appears from the petition and answer: That the
city of New Decatur was a city of more than 6,000 and
less than 20,000 inhabitants, and that it was divided

[Reese v. State, ex rel. Carswell, et al.]

into four wards, each of which were entitled to be represented by two councilmen, and besides the city elected the president of the council and the mayor from the city at large. That at the election eight councilmen, a president of council, and a mayor were elected and qualified. That F. L. Chenault, councilman from the first ward, was elected president pro tempore of the council. That later Cook, the president-elect of the council, resigned, and Chenault by virtue of his office of president pro tempore became the president of the council, and that after he had duly qualified there was a vacancy in the office of councilman from ward 1, and election was held to fill the vacancy, and one S. M. Winton received four votes and J. E. Reese, the respondent, received three votes, whereupon the president declared no election, and on the succeeding ballot Winton received three votes and Reese received five votes, including the vote of Chenault, the president of the council, who had not voted on the first ballot. It appeared from both the petition and the answer that both Reese and Winton possessed the necessary qualifications to hold the office. On this state of the record, judgment was awarded ousting the respondent Reese.

TIDWELL & SAMPLE, and CALLAHAN & HARRIS, for appellant. Section 1064, Code 1907, as amended by Acts 1909, confers upon the president of the council in municipalities of this class, all the powers of a councilman, including the right to vote.—*U. S. v. Fisher*, 2 Cranch. 318; *Eslava v. Bolling*, 22 Ala. 725; *Maxwell v. State*, 7 South. 824; *Intendent v. Sewell*, 46 N. C. 49; 26 N. W. 879; 37 N. W. 184; 113 Pac. 775; 2 Dill. Mun. Corp. sec. 513; 50 Mo. 488; 49 Atl. 660. His failure to vote was not a concurrence in the action of the majority of those who did vote.—Sec. 1192, subdivision 7, Code 1907;

[Reese v. State, ex rel. Carswell, et al.]

47 Ia. 629; 17 Am. St. Rep. 878; 16 Cal. 591; *Michael v. State,* 163 Ala. 425; *Clark v. Uniontown,* 58 South. 725; 1 Dill. sec. 385; 2 Dill. sec. 528. The word "majority" as used in said section refers to the whole number of elected members of the council, and not to a majority of the quorum.—*Wood v. Gordon,* 52 S. E. 261. In any event, the council is a judge of the election and qualification of its members, and Reese having received a majority on the 2nd ballot, and having been declared elected, was properly a member of the council.—Sec. 1065, Code 1907; *Green v. Adams,* 119 Ala. 475; *Hudmon v. Slaughter,* 70 Ala. 552; 26 N. W. 879.

C. L. PECK, and E. W. GODBY, for appellee. If the president of the council had no right to vote, Winton was elected on the 1st ballot by a vote of 4 to 3, and Reese was without authority to hold the office. There can be no such thing as a councilman who is not elected from some particular ward in cities of less than seven wards.—Sec. 1069, Code 1907. The mayor may vote in certain cases, but the grant is nowhere conferred upon the president of the council.—Acts 1909, p. 198. The president's asserted right to vote and then to umpire in case of a tie, would lead to strange situations.—*Bosquet v. Gleason,* 29 South. 399; *Buell v. Buckingham,* 85 Am. Dec. 519; 2 Dill. 835; *Brown v. Foster,* 33 Atl. 662; 2 McQuillin, sec. 433. Being a part of the council, therefore, is not equivalent to being made an elector with a right to vote therein.—Authorities supra, and 42 S. E. 777; 49 S. W. 456; 12 N. Y. Supp. 192. We are dealing here with a vacancy which is an abnormal contingency. —23 A. & E Enc. of Law, 340; 29 Cyc. 1401; 33 L. R. A. 299; 64 Am. St. Rep. 584; 24 Wend. 15; *State v. Skeggs,* 46 South. 268; 50 Mo. 488; 1 Am. St. Rep. 498. A failure of the president to vote was a concurrence by the

[Reese v. State, ex rel. Carswell, et al.]

president in the action of a majority of the quorum and tantamount to a majority of the whole council.—2 Dill. 851; *State v. Green,* 370 Ohio St. 227; 23 N. E. 72, and cases cited. The statute only requires merely concurrence of the majority and not a vote of the majority.— Sec. 1192, subdivision 7, Code 1907, and authorities supra; 6 L. R. A. 313; 55 Am. Rep. 69. The election thus held is not subject to reconsideration.—*Hughey v. Jones,* 37 South. 193; 2 Dill. 858; 55 Am. Rep. 65; see also 143 N. C. 110; 61 Ohio St. 384.

SAYRE, J.—New Decatur is a city of more than 6,000 and less than 20,000 inhabitants. It is divided into four wards. Each ward is represented in the council by two councilmen. The first question presented for decision by this case is whether the president of the city council has a right to vote when the city council comes to fill a vacancy occurring in its own membership. His franchise in such case must be found in section 1064 of the Code as amended by the Act of August 20, 1909. Special Session Acts 1909, p. 100. We quote the necessary part of the act: "In cities having a population of six thousand or more, at each general municipal election, there shall be elected the following officers, who shall compose the city council for such cities, * * * and who may exercise the legislative functions of city government and any other powers and duties which are, or may be, vested by law in the city council or its members: A president of the city council; and in cities having seven wards or less, two aldermen from each ward, to be elected by the qualified voters of the several wards voting separately in every ward." For cities having less than 20,000 inhabitants and more than seven wards, a different provision is made. The section concludes: "Vacancies in the office of aldermen shall be

filled by the council at the next regular meeting or any subsequent regular meeting of the council, the person so elected to hold for the unexpired term." The question is perhaps sufficiently well answered by the plain language.of the statute which, for the purpose in hand, may be condensed as follows: The city council fills vacancies. The city council is composed of a president and two aldermen for each ward. These named functionaries exercise the legislative powers of city government and all other powers and duties which are or may be vested by law in the city.council or its members.

But counsel for appellee, habitually resourceful, ingenious, and plausible, argues, to state his position without embellishment, that in every case the right to act as elector must be expressly conferred and not be left to implication; that a man cannot vote in a council who is not a councilman; that the existence of the voting power in the president of the council would thwart the manifest design of the statute by giving the ward fortuitously favored by his residence an undue preponderance of authority. To point his argument, he then notes that the Code, as amended by the act of August 25, 1909 (Sp. Sess. Acts, p. 198), makes the mayor, a part of the council in cities and towns of less than 6,000, providing that in such cases "the legislative functions shall be exercised by the mayor and five aldermen; the mayor shall vote with and preside over the deliberations of the council;" and adds authorities which show that the mayor is a member of the council only when made so by the charter or legislative act applicable, and, when this is the case, it is to the extent of such powers as are specially committed to him, and no further, that he is a part of the council.

We may admit every premise of appellee's syllogism without feeling any constraint to his conclusion that

[Reese v. State, ex rel. Carswell, et al.]

under the statute in question the president of the council is not vested with the power and duty of voting to fill a vacancy. The first in order of them is admitted without reservation. It is also admitted that a man cannot vote in a council who is not a councilman, but with a reserve which is both proper and necessary. He need not be a councilman eo nomine. He may be entitled "president of the council" and still vote with the councilmen if the Legislature so directs. And it has so directed in language so plain that we will not quote it again. Appellee brings to the support of his argument some remote analogies which he thinks ought to be followed and refers to legislative policies which we cannot accept as having application to all cities and towns without reference to population, for the simple reason that no such consistent policy can be found in the statutes regulating the organization of municipal corporations. As for the proposition concerning the equal distribution of representatives in the council in respect to their places of residence, there is no such all-pervading policy expressed by the statute. The letter of the law provides otherwise in the particular case. It does so in other cases also. It does so in the case of cities and towns of less than 6,000. In the last-named case, where the mayor constitutes one-sixth of the entire representative body, the Legislature has seen fit not to follow the analogy and example afforded by the organization of senates, church conferences, conventions, synods, and the like, but has chosen the plan of popular assemblies, such as Houses of Representatives and town meetings in which the presiding officer retains his right to vote. It has submitted the council to the supposed indelicacy of a situation in which the presiding officer, the mayor, sits as an umpire while taking part in the legislative and other activities of the body over which he presides. True,

in the case of cities of more than 6,000, the Code, as amended, does not use the term "vote" in laying down the powers of the president, whereas in the case of cities and towns of less than 6,000 the term is used. No more does it say that councilmen in the first case shall vote, but obviously it means that they shall vote. The difference in phraseology in the two cases may be accounted for without assuming a difference in meaning, and that account will be in accord with the natural meaning of the language used in the first case and the necessary meaning of that used in the second. In both cases the original Municipal Code Law was amended. In the first the words of that law at the point in question were repeated literally. No change was intended in respect of the powers and duties of the president of the council. In the second the amendment was of an original section which provided that in cities of more than 6,000 the mayor should not sit nor vote with the council, but that in similar cities and towns "the legislative functions shall be exercised by the mayor and five aldermen; the mayor shall sit with and preside over the deliberations of the council and cast a deciding vote in case of a tie," and the amendment enlarged the powers of the mayor, contrary to the policy which appellee supposes the Legislature had in mind, by providing that "the legislative functions shall be exercised by the mayor and five aldermen; the mayor shall vote with and preside over the deliberations of the council." In view of the language of the previous statute and the general opinion held in reference to the proper functions of the chief executive officer of cities and towns, as shown in the authorities cited by appellee, to carry out its real policy in cities and towns of less than 6,000, it was desirable, of course, for the Legislature to be entirely specific and say that mayors who preside shall vote. Executive officers are

not ordinarily made members of legislative bodies. But a president of council, where he is not a mayor, is an entirely different institution. He is not an executive officer; to confer upon him legislative power involved no anomaly in a scheme of municipal government. Certainly it was not necessary that the word "vote" should be used. The same idea might have been expressed with perfect clearness in different ways. The idea might have been expressed by perhaps a dozen different collocations of words. And one equivalent collocation the Legislature used in conferring the representative franchise upon the president of the council in cities of more than 6,000 inhabitants, and we find no reason in general policy or the letter of the statute which would require us to hold that he cannot vote as a member of the council to which the people have elected him. In fact, we are quite clear that the letter of the statute requires that he shall vote.

The question whether the president of council shall be regarded as a member of council, or councilman, with power to vote, is one of legislative intent. The legislative intent is not to be discovered by focusing the attention upon the presence or absence of a single word. It must be reached by a comprehensive view of the statute as a whole. It is within the power of the Legislature to confer on the president of council the functions of a member of the council in every respect, and if the legislation on the subject calls for such a construction he must be regarded as a councilman, though by reason of his added power and dignity he be appropriately referred to as the president of the council. 2 Dillon Mun. Corp. § 513. We have stated our judgment as to the proper construction of the statute in question.

When the council met to fill the vacancy in its membership, there were present the president presiding and

seven councilmen. On the first ballot, the president not voting, for what reason does not appear, S. M. Winton received four votes, respondent three. Another ballot was ordered, thus indicating the judgment of the council, in which those who voted for Winton must be held to have concurred, that no election had resulted, and upon the second ballot respondent received five votes, including that of the president, and was thereupon declared elected, and afterwards in due course qualified and assumed to exercise the powers, rights, and privileges of a councilman. On these facts relators contend that Winton was elected and that in consequence there was thereafter no vacancy to which respondent could be elected. Subsection 7 of section 1192 of the Code provides: "All elections of officers shall be made viva voce, and a concurrence of a majority of the whole number of elected members to the council shall be required. On the vote resulting in an election or appointment the name of each member and for whom he voted shall be recorded." The further provision is that "vacancies in the office of aldermen," by which we cannot doubt the Legislature meant councilmen, "shall be filled by the council at the next regular meeting," etc. Appellee holds that a majority of a quorum had a right to elect. Such is not the language of the act. No word of the act can be overlooked. Every word must be given effect, if possible. The office of interpretation is to ascertain what the language of an act means, and not what the Legislature ought to have said or may have intended apart from the language used. There was a legislative purpose in requiring the concurrence of a majority of the whole number of members elected to the council. If it had intended that a majority of a quorum or of the members constituting the council after a vacancy occurred should suffice, the Legislature would have said

so; at least it would have omitted the words "the whole number of elected members to the council." We follow the plain language of the act. If authority be desired, it may be found in *Wood v. Gordon,* 58 W. Va. 321, 52 S. E. 261; *Pollasky v. Schmid,* 128 Mich. 699, 87 N. W. 1030, 55 L. R. A. 614, 92 Am. St. Rep. 560; *Pimental v. San Francisco,* 21 Cal. 351.

Nor can we agree with appellee that the presence of the president of the council without voting on the first ballot ought to be held for a concurrence with the majority of the members voting on that ballot so as to constitute that majority a majority of the members elected to the council. An able commentator on the law of municipal corporations has said: "Where the statute requires the affirmative action of a majority of the entire board, or a majority of the members present, a refusal to vote may result in defeating the proposition because in such case affirmative action is required and those who refuse to vote cannot be counted on the affirmative side, under such a specific statutory requirement, and the proposal before the council may be defeated by lack of the affirmative majority required by the statute." 2 Dillon Mun. Corp. (5th Ed.) § 527. Judge Dillon has also said that: "The nature and effect of a blank ballot cast by a member of the city council at an election for an officer has been before the courts for consideration, and the weight of authority and, as we think, the better view is that the blank ballot is a mere nullity; that it cannot be counted for or against either of the candidates voted for. * * * It has, however, been pointed out that the rule that blank ballots are nullities and can have no application when the statutes require the affirmative action of the majority of the entire body or a majority of all the members present." Section 328. In this case there is an unmistakable requirement of affirm-

ative action by a majority of all the members elected to the council. Authorities cited by appellees having to do with the transaction of the ordinary business of municipal councils, where a majority of a quorum may act, are not in point. Judge Dillon points out the distinction with great clearness. We might extend this opinion by adding some reflections of our own; but what is the use? The distinction appears to us to be entirely sound in principle, and we could assign no satisfactory reason for taking the contrary view. The text to which we have referred, and the authority of the cases upon which it is placed, leave in our minds no doubt that Winton was not elected on the first ballot, and that respondent was duly and legally elected on the second.

On the facts alleged in his return to the writ, the respondent is entitled to exercise the powers, rights, and privileges of the office he has assumed to hold, and the trial court's conclusion to the contrary on the demurrer was error.

Reversed and remanded.

DOWDELL, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.