JONES, Justice.
This case involves a contest between two candidates for the office of mayor of the Town of New Hope.
In August of 1976, a primary was held to elect a mayor and Town Council for New Hope. There were three candidates for mayor, none of which received the required number of votes. A run-off was held between the top two vote-getters, John Davis Mann, the incumbent mayor, and Kenneth Self, an incumbent city councilman. The result was a tie vote.
On September 15, 1976, the Town Council met; Mann was absent and the remaining five councilmen present were J. C. Taylor, Houston Key, Self, Charles Swafford, and Johnny Cobb. The Council then attempted to elect a mayor pursuant to Tit. 37, § 34(54), Code, which states in pertinent part:
“If there should be a tie vote cast at any such run-off election then in such event the tie shall be decided by the municipal *295 governing body. A vote for a particular candidate by a majority of the total membership of the governing body shall be necessary to decide the election in his favor. The municipal clerk shall file a copy of each certificate of election in the office of the judge of probate of the county in which the city or town is situated, and the judge shall file such certificate in the same manner that he files the declaration of the result of elections to county offices.
First, Mann was nominated and received the vote of three councilmen. Councilman Key voted against the election and Self abstained. Thus, Mann received only three votes. Next, Councilman Self was nominated, but the nomination died for lack of a second.
The Council met again on October 4, 1976, with all the members present. Mann presided as chairman of the meeting. Councilmen Brockway, Key, Paseur, Swaf-ford, and Turner were sworn into office as new members of the Council. Mann’s offer to be sworn in as mayor was refused. Houston Key pursuant to Tit. 37, § 428, Code, was selected as chairman pro-tempore and presided over the meeting. At the close of the meeting, Key announced that at the next meeting the present council would elect a mayor.
Mann’s petition for a temporary restraining order was granted by the trial Court prohibiting the Town Council from electing a new mayor. Kenneth Self intervened in the case and filed an answer to the complaint. The trial Judge then granted a motion to consolidate the hearing on the preliminary injunction with the trial on the merits. On November 5, the trial Court entered an order adverse to Mann, the incumbent mayor. Subsequently, our Court granted a motion for restoration of the injunction pending appeal, pursuant to Rule 8(b), ARAP.
Three issues are presented on appeal: (1) Whether the vote of three in favor of Mann was sufficient to elect him mayor. Stated differently, because Mann and Self themselves did not vote, does Tit. 37, § 34(54), Code, require a unanimous vote of the remaining four members of the Town Council? (2) If the votes of three Council members were insufficient to elect Mann mayor, does he hold over until his successor is elected? (3) If three votes were insufficient (whether or not Mann holds over), how does the Town Council proceed to fill the vacancy in the office of mayor?
It must be stated at the outset that municipal authority is delegated power, derived from the legislative power of the State. Mitchell v. City of Birmingham, 222 Ala. 389, 133 So. 13 (1931). Therefore, we are bound in our scope of review by the intent of the legislature.
Tit. 37, § 34(54), requires, in case of a tie vote, “ . . .a vote . . . by a majority of the total membership of the governing body . . . .” to break the tie. According to §§ 429(2) and 404 of Tit. 37, the governing body of a town the size of New Hope is composed of a mayor and five councilmen. Mann contends that the words “total membership” means the total number of members who are eligible to vote at the time the vote is taken; that he and Self were disqualified or ineligible to vote; and that, by reason of their disqualification, the “total membership” was reduced to four. We need not reach the question of whether Mann and Self were disqualified. Our decision is based upon the requirement of the statute that the vote must be by a “majority of the total membership of the governing body”.
The issue of what constitutes a majority of a city council was presented to the Court previously in Reese v. State, etc., 184 Ala. 36, 62 So. 847 (1913). In Reese, the statute in question stated in pertinent part:
“ ‘All elections of officers shall be made viva voce, and a concurrence of a majority of the whole number of elected members to the council shall be required.’ ” (Section 1192, Subsection 7, Code of Alabama 1907.)
In interpreting this section, the Reese Court stated:
“If [the legislature] had intended that a majority of a quorum or of the members *296 constituting the council after a vacancy occurred should suffice, the Legislature would have said so; at least it would have omitted the words ‘the whole number of elected members to the council.’ We follow the plain language of the act.”
Appellant insists that, because the legislature. subsequently substituted the words “a majority of the total membership” for the previous words “a majority of the whole number of elected members”, Reese is distinguishable. We think not. If anything, the words “majority of the total membership” strengthen the rationale in Reese. This phrase would cover all members of the Council whether “elected” or “appointed.” Thus, we hold that on September 15, the New Hope Town Council failed to break the tie in the manner prescribed by Tit. 37, § 34(54). For a case interpreting a similar statutory provision, see Ezell v. City of Pascagoula, 240 So.2d 700 (Miss.1970).
Next, Mann contends that, assuming four votes were necessary for election, he nonetheless holds over pending the election of his successor. We agree with the trial Judge that Mann does not hold over. As stated in the final decree below:
“Plaintiff contends he should hold over, but there is no Alabama law allowing a mayor to hold over. The traditional language ‘ . . . shall hold office until his successor is elected and qualified’ is not used in the statutes relating to the office of the mayor.”
Moreover, § 428 of Tit. 37 provides: “In the event of a vacancy, from any cause, in the office of mayor, the president of the council shall fill the vacancy either from its own membership or from without the membership of the council.”
This provision for the filling of a vacancy in the office of mayor (here statutorily created through the operative effect of § 34(54)) further militates against a holdover by an incumbent mayor.
This brings us to the third and final issue: What is the procedure now to be followed by New Hope in electing a new mayor?
The trial Judge, in his final decree, answered the question thusly:
“Title 37, § 428, .Code of Alabama 1940 (Recomp. 1958) provides for the council to fill vacancies with an absolute minimum of statutory restriction. It further provides for a chairman pro-tempore to act for the mayor during his absence or disability. The council has such flexibility as to allow easy and expeditious filling of mayoral vacancies, thereby eliminating any practical need for holding over.”
It is our interpretation of this language that the trial Judge is of the opinion that a mayor may now be elected by a majority of the current council, i. e., three out of five. If the vacancy here in issue had not been created by the operative effect of another section of the Code (§ 34(54)), which itself provides for the method of election (majority of the total membership), we would be inclined to agree with the trial Court. To be sure, the most universally accepted common law rule, in the absence of a contrary statutory provision, is that a majority of any body constitutes a quorum for the transaction of business, and a majority of the quorum concurring is sufficient to take any particular action. Federal Trade Commission v. Flotill Products, Inc., 389 U.S. 179, 88 S.Ct. 401, 19 L.Ed.2d 398 (1967). But the vacancy with which we are here concerned was created by operation of a statute mandating a majority vote of the total membership, i. e., four out of six. Now, to fill that vacancy by the application of some other standard (three out of five) produces the anomaly of changing the rules in the middle of the contest.
Admittedly, the statute is silent as to the number or proportion of votes required to fill a vacancy, and thus we must interpret the statute to answer the inquiry. We have been cited to no authority, and we find none, to aid us in our search for this answer. But we are constrained to the conclusion that our interpretation of the “majority of the total membership” phrase in the tie-vote situation — which results in the *297 creation of this vacancy now to be filled— must remain consistent; and that the votes of three out of four, which was insufficient to elect a mayor following the tie vote in the run-off election, cannot be resorted to in filling the vacancy thereby created.
One example will suffice to support our conclusion. Suppose, as here, the council voted three to one for Mann under § 34(54) —less than the required majority of the total membership (four of six). A vacancy was created as of the expiration of Mann’s old term of office — on October 4. Suppose further the council membership and its vote remained unchanged; is it reasonable to assume that the legislature intended the same three votes, insufficient to break the tie, suddenly to become sufficient to elect Mann as mayor for the new term?
Indeed, our affirmative answer to this question would lend credibility to the argument that this very vote, though insufficient to break the tie, was sufficient to fill the vacancy thereby created. In other words, if the council’s three to one vote failed to elect the incumbent mayor under § 34(54), it nonetheless had the legal effect of filling the vacancy by electing him under § 428. Surely, we must decline to accept such an interpretation as would render the legislative intent ludicrous. By the same force of reason we must reject the City’s contention that three votes, taken at a subsequent council meeting, are sufficient to fill this statutorily created vacancy.
Counsel for the City — because the members of the Town Council, and thus the votes, did change — contends for a different set of rules to allow three votes (three out of a total of five qualified council members) to elect a new mayor. The applicable rule must be palatable to both situations, and the only one that meets this test is the “majority of the total membership of the governing body” standard which we have already applied in creating the vacancy in the first instance. Therefore, we hold that the vacancy in the office of mayor of New Hope must be filled, whether “from its own membership or from without the membership of the council”, by a vote of the majority of the total membership of the governing body.
We are not to be understood by the latter holding as saying that in all events, under all circumstances, a vacancy can be filled only by a majority vote of the total membership. Our holding is limited to the peculiar facts in the instant case.
AFFIRMED AS MODIFIED.
BLOODWORTH, MADDOX, ALMON and EMBRY, JJ., concur.