EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>Peticionario<br><br>v.<br><br>Adaline Torres Santiago<br>Recurrida | Certiorari<br><br>2008 TSPR 184<br><br>175 DPR _____ |

Número del Caso: CC-2007-0847

Fecha: 8 de diciembre de 2008

Tribunal de Apelaciones:

> Región Judicial de San Juan-Panel III

Juez Ponente:
> Hon. Zadette Bajandas Vélez

Abogado de la Parte Peticionaria:

> Lcdo. César López Cintrón
> Fiscal Especial Independiente

Oficina del Procurador General:

> Lcda. Sarah Y. Rosado Morales
> Procuradora General Auxiliar

Abogado de la Parte Recurrida:

> Lcdo. Rafael González Vélez

Materia: Artículos 260 y Artículo 274 del Código Penal.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Peticionario

      v.                         CC-2007-0847   Certiorari

Adaline Torres Santiago

   Recurrida

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico a 8 de diciembre de 2008.

    La presente controversia requiere que examinemos la ley que creó el cargo del Fiscal Especial Independiente (en adelante, F.E.I.), el cual tiene la encomienda de investigar y procesar criminalmente aquellos actos indebidos atribuidos a altos funcionarios gubernamentales. En particular, debemos determinar si el Panel del F.E.I. puede actuar válidamente con tan sólo dos miembros en propiedad tras surgir una vacante por la renuncia de uno de sus tres integrantes. Tras analizar detenidamente el asunto, respondemos dicha interrogante en la afirmativa, siempre que se cumpla con el requisito de mayoría dispuesto por el estatuto para las decisiones del referido organismo.

I

Los hechos del caso de autos no están en controversia. Las Comisiones de Asuntos del Consumidor y de Infraestructura de la Cámara de Representantes de Puerto Rico realizaron una investigación en torno a ciertas tarifas fijadas por la Administración Metropolitana de Autobuses (en adelante, la A.M.A.). Durante el transcurso de la referida investigación, surgió información a los efectos de que un grupo de personas con impedimentos físicos, usuarios del Programa Llame y Viaje de la A.M.A., no pudieron asistir a deponer a las vistas públicas y oponerse al referido aumento en las tarifas. Ello a pesar de haber reservado los servicios de transportación de dicho programa. Según la información recibida por ambas comisiones legislativas, sus reservaciones fueron borradas del sistema computarizado, razón por la cual no se les proveyó el servicio. Tras requerir la comparecencia de la Sra. Adaline Torres Santiago -entonces Presidenta de la A.M.A.- a una vista pública, ésta alegó desconocer el incidente y negó haber dado órdenes para cancelar el servicio.

No obstante, las comisiones recibieron prueba oral y documental tendiente a establecer que fue la señora Torres Santiago quien alegadamente ordenó cancelar las reservaciones. Por esta razón, la Cámara de Representantes refirió el asunto al Departamento de Justicia. De igual forma, el entonces Secretario de la Gobernación, Hon. Aníbal José Torres, presentó ante el Departamento de Justicia una

querella en contra de la señora Torres Santiago. En la querella, el Secretario de la Gobernación alegó que la funcionaria posiblemente incurrió en actos ilegales mientras se desempeñaba como Presidenta y Gerente General de la A.M.A.

Luego de la correspondiente investigación, el Secretario de Justicia, Hon. Roberto J. Sánchez Ramos, refirió el caso a la Oficina del Panel sobre el Fiscal Especial Independiente (en adelante, el Panel). Según el criterio del Secretario de Justicia, la señora Torres Santiago pudo haber incurrido en los delitos de alteración o mutilación de propiedad y perjurio, Arts. 260 y 274 del Código Penal, respectivamente. 33 L.P.R.A. secs. 4888 y 4902. Tras recibir el referido del Secretario de Justicia, el Panel decidió, por unanimidad, nombrar como Fiscal Especial Independiente al Lcdo. César López Cintrón para que investigara y analizara la evidencia recopilada en torno a la querella presentada en contra de la señora Torres Santiago. Al momento de hacer esta designación, el Panel sólo estaba constituido por dos de sus tres miembros; a saber, los licenciados Ricardo Negrón Rodríguez y Juan Ortiz Torrales. El tercer puesto estaba vacante.

Sin embargo, por entender que su designación había sido realizada por un Panel ilegalmente constituido, el licenciado López Cintrón decidió devolver el expediente a la Directora Ejecutiva de la Oficina del Panel para que lo custodiara. A esos efectos, en agosto de 2006 el licenciado López Cintrón le comunicó su decisión a la señora Torres Santiago. En su comunicación, explicó que luego de recibir la designación

para investigar el caso, el Secretario de la Cámara de Representantes le informó oficialmente al Gobernador de Puerto Rico, Hon. Aníbal Acevedo Vilá, que los nombramientos de los licenciados Negrón Rodríguez y Ortiz Torrales como miembros del Panel habían sido rechazados por la Cámara de Representantes el 22 de junio de 2006.

Posteriormente, durante el receso de la sesión ordinaria de la Asamblea Legislativa, el Gobernador nombró a la Lcda. Elba Rodríguez Fuentes, al Lcdo. Manuel Díaz Morales y a la Lcda. Gloria Iagrossi Brenes como nuevos miembros del Panel. El Gobernador no hizo ningún nombramiento para los puestos de miembros alternos. No obstante, el 24 de agosto de 2006 la licenciada Iagrossi Brenes renunció a su puesto, creando así una vacante.

Tras la renuncia de la licenciada Iagrossi Brenes, el Panel -integrado sólo por dos miembros, los licenciados Rodríguez Fuentes y Díaz Morales- decidió de manera unánime designar nuevamente al licenciado López Cintrón como F.E.I. para investigar el caso de la señora Torres Santiago. Tras la referida designación, la representación legal de la señora Torres Santiago envió una carta al F.E.I. en la cual adujo que el Panel no actuó conforme a derecho al designarlo, pues no estaba debidamente constituido. No obstante, el F.E.I negó dicha alegación y declinó rechazar su designación. De esta forma, se reinició la investigación en contra de la señora Torres Santiago, la cual culminó con la presentación de un

cargo por el delito de alteración o mutilación de propiedad y otro por perjurio. Arts. 260 y 274 del Código Penal, *supra*.

Así las cosas, luego de determinarse que existía causa probable para el arresto de la señora Torres Santiago y señalarse la fecha para la vista preliminar, la defensa de la señora Torres Santiago presentó una moción de desestimación. En la referida moción, adujo que el F.E.I. carecía de autoridad en ley para presentar los cargos, debido a que había sido designado por un Panel de solo dos miembros, no confirmados por la Asamblea Legislativa. Luego de evaluar los argumentos de las partes, el foro de instancia declaró no ha lugar la moción de desestimación.

Inconforme con la determinación del tribunal de instancia, la señora Torres Santiago recurrió ante el Tribunal de Apelaciones y le imputó al foro primario haber errado al denegar su solicitud de desestimación por falta de jurisdicción del F.E.I. A esos efectos, alegó nuevamente que el Panel que designó como F.E.I. al licenciado López Cintrón para investigar la querella presentada en su contra no estaba debidamente constituido ni confirmado por la Asamblea Legislativa. En cuanto a la falta de confirmación, adujo que ello representaba una situación de conflicto de interés para los miembros del Panel, toda vez que la investigación que dio paso a los cargos en su contra se inició en la Cámara de Representantes, cuerpo que, a su vez, debía pasar juicio sobre las nominaciones al Panel hechas por el Gobernador.

El Tribunal de Apelaciones revocó el dictamen emitido por el tribunal de instancia. El foro apelativo determinó que la decisión y el proceso de evaluar, dirimir y realizar el nombramiento del F.E.I. le correspondía a un panel constituido por tres miembros y no dos como ocurrió en el caso de autos. Dicho tribunal concluyó que el hecho de que la Ley Núm. 2 de 23 de febrero de 1988, conocida como la Ley del F.E.I., 3 L.P.R.A. sec. 99h *et seq,* provea para el nombramiento de dos miembros alternos del Panel es señal de la intención del legislador de que siempre el Panel esté constituido por el número de miembros establecidos en el referido estatuto. En consecuencia, el Tribunal de Apelaciones resolvió que para que el Panel pueda ejercer sus funciones debe estar integrado por tres miembros.

De dicha determinación recurre ante nos el Ministerio Público, representado por el F.E.I. y aduce –en esencia– que erró el Tribunal de Apelaciones al determinar que el Panel no estaba debidamente constituido al emitir la resolución mediante la cual se designó al licenciado López Cintrón como F.E.I. en el presente caso. La señora Torres Santiago también compareció oportunamente y reiteró los argumentos esbozados ante el Tribunal de Apelaciones.

Por su parte, el Procurador General solicitó intervenir como amigo de la corte, a lo que accedimos. En su comparecencia, el Procurador General resaltó el alto interés público que reviste la presente controversia y adujo que para cumplir con el requisito de mayoría dispuesto por la ley para

la toma de decisiones por parte del Panel, no es necesario que el mismo cuente con la totalidad de sus miembros. Según su criterio, basta con la concurrencia de más del cincuenta por ciento (50%) de los miembros participantes; es decir, una mayoría simple.

Examinado el recurso, expedimos el auto. Con el beneficio de la comparecencia de las partes, así como la del Procurador General en calidad de *amicus curiae,* procedemos a resolver.

II

La Ley Núm. 2, *supra*, creó la figura del Fiscal Especial Independiente con el propósito de prevenir, erradicar y penalizar cualquier comportamiento delictivo o indebido de los funcionarios gubernamentales a fin de restaurar la confianza del Pueblo en su gobierno y en sus servidores públicos. De conformidad con la Ley Núm. 2, *supra*, el F.E.I. tiene la encomienda de acudir a los tribunales de justicia, en representación del Estado Libre Asociado de Puerto Rico, para instar las acciones criminales que procedan como resultado de las investigaciones que realice sobre los asuntos ante su consideración. 3 L.P.R.A. sec. 99j.

De igual forma, la Ley Núm. 2, *supra*, estableció un Panel compuesto por tres miembros ex jueces del Tribunal Supremo, el Tribunal de Apelaciones o el Tribunal de Primera Instancia, quienes deben ser nombrados por el Gobernador con el consejo y consentimiento del Senado y la Cámara de

Representantes. 3 L.P.R.A. sec. 99q. El Panel tiene a su cargo la supervisión del F.E.I., quien será el responsable de encausar criminalmente a los funcionarios gubernamentales cubiertos por la Ley Núm. 2, *supra*.

Según la referida ley, los funcionarios cubiertos por el estatuto son: el Gobernador; los Secretarios y Subsecretarios de Departamentos del Gobierno; los jefes y subjefes de agencias; los Directores Ejecutivos de las corporaciones públicas; los alcaldes; los miembros de la Asamblea Legislativa de Puerto Rico; los asesores y ayudantes del Gobernador; los jueces, y todo individuo que haya ocupado cualesquiera de los cargos antes enumerados, a quien se le impute la comisión de cualquier delito grave, y menos grave incluido en la misma transacción o evento, y los delitos contra los derechos civiles, la función pública y el erario público, mientras ocupaba uno de los cargos mencionados. Lo anterior está sujeto a que la designación del F.E.I. se haga dentro de los cuatro años siguientes a la fecha en que el funcionario investigado cesó en su cargo. 3 L.P.R.A. sec. 99k.

La facultad que la Ley Núm. 2, *supra*, concede al F.E.I. para procesar criminalmente a funcionarios gubernamentales es una facultad excepcional, toda vez que el Secretario de Justicia no comparecerá como representante legal del Pueblo de Puerto Rico para instar la causa penal a través de los fiscales del Departamento de Justicia. Como es sabido, el Secretario de Justicia es el funcionario encargado de

promover el cumplimiento y ejecución de las leyes, así como de investigar y encausar cualquier violación a las leyes penales. 3 L.P.R.A. sec. 292. El objetivo del mecanismo establecido en la Ley Núm. 2, *supra*, es que la investigación y procesamiento de funcionarios públicos se conduzca bajo criterios objetivos e imparciales, sin que medien favoritismos ni persecuciones por razones partidistas. Véase Pueblo v. Rexach Benítez, 130 D.P.R. 273, 295 (1992).

De conformidad con la Ley Núm. 2, *supra*, el Secretario de Justicia realizará una investigación preliminar en todo caso en que reciba información bajo juramento que a su juicio constituya causa suficiente para investigar si se ha cometido cualquier delito incluido en el referido estatuto por alguno de los funcionarios gubernamentales cubiertos por la Ley Núm. 2, *supra*. El Secretario deberá completar la investigación preliminar en un término prorrogable de noventa días. 3 L.P.R.A. sec. 99o. Una vez el Secretario haya concluido dicha investigación, éste remitirá un informe y el expediente del caso al Panel. Ello independientemente de que su recomendación sea que no se designe un F.E.I. 3 L.P.R.A. sec. 99k.

Luego de recibir el expediente del caso y el informe del Secretario de Justicia, corresponde al Panel determinar si procede o no la designación de un F.E.I. 3 L.P.R.A. sec. 99r. Asimismo, será el F.E.I. quien, luego de la correspondiente designación, estará a cargo de la investigación y determinará si deben presentarse denuncias en contra del funcionario

investigado. Como expresáramos anteriormente, el F.E.I. tendrá jurisdicción exclusiva para investigar y procesar aquellas acciones penales contenidas dentro de la encomienda que se le asigne. 3 L.P.R.A. sec. 99t.

Sobre la composición del Panel, la Ley Núm. 2, *supra*, dispone que el Gobernador designará, con el consejo y consentimiento de la mayoría del número total de los miembros que componen el Senado y la Cámara de Representantes, un Panel integrado por tres miembros en propiedad con experiencia en el campo del derecho penal, los cuales serán seleccionados entre los ex jueces del Tribunal Supremo, el Tribunal de Apelaciones o el Tribunal de Primera Instancia. El Gobernador también designará, de la misma forma, dos miembros alternos que formarán parte del Panel en caso de inhibición o de alguna otra circunstancia que le impida a cualquier miembro en propiedad desempeñar sus funciones. 3 L.P.R.A. sec. 99p. Cabe destacar que la Ley Núm. 2, *supra*, dispone que las decisiones del Panel se tomarán por mayoría, sin establecer un requisito específico de quórum.

### III

En el caso de autos, el Tribunal de Apelaciones determinó que el Panel que designó un F.E.I. para investigar la querella presentada en contra de la señora Torres Santiago no estaba debidamente constituido. Ello porque al momento de hacer la designación existía una vacante en dicho Panel. En efecto, ante la renuncia de la licenciada Iagrossi Brenes, la

designación del licenciado López Cintrón como F.E.I. fue hecha por los licenciados Díaz Morales y Rodríguez Fuentes, quienes tomaron dicha determinación de forma unánime. En vista de ello, debemos determinar si la referida designación cumplió con el requisito de mayoría establecido en la Ley Núm. 2, *supra*, para tales determinaciones y si erró el foro apelativo al concluir que el Panel debe estar integrado por sus tres miembros para poder ejercer sus funciones. Veamos.

Como es sabido, al interpretar un estatuto el foro judicial debe remitirse al texto de la ley, pues cuando el legislador se ha expresado de manera clara e inequívoca, el texto de la medida es la expresión por excelencia de la intención legislativa. <u>Romero Barceló v. Estado Libre Asociado</u>, res. el 10 de noviembre de 2006, 2006 T.S.P.R. 163. El lenguaje empleado por el legislador es siempre decisivo. 1 E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e Interpretación de la Leyes en Puerto Rico</u>, pág. 267 (2da ed., 1987). Nuestro análisis sobre la Ley Núm. 2, *supra*, debe, además, enmarcarse en lo que fue el objetivo principal del legislador al aprobarla.

Sobre el particular, es menester señalar que con dicha ley el legislador quiso garantizar la absoluta objetividad en las investigaciones en contra de altos funcionarios del gobierno. De igual forma, el legislador quiso proveer un foro neutral e independiente para dilucidar supuestos o reales actos indebidos atribuibles a funcionarios gubernamentales. Véase Exposición de Motivos, Ley Núm. 2, *supra*.

En cuanto a la controversia particular del caso de autos, la Ley Núm. 2, *supra*, no establece un requisito de quórum para que el Panel pueda tomar sus determinaciones. Por el contrario, el único requisito establecido en dicho estatuto es que las decisiones sean tomadas por mayoría.[1] En su comparecencia, el F.E.I. sugiere que –en vista de que la ley no es específica– interpretemos que la referida exigencia de mayoría, se trata de un requisito de mayoría simple. Ello en oposición a los otros tipos de mayoría; a saber, mayoría absoluta y mayoría extraordinaria. Según su razonamiento, al ser el Panel un cuerpo colegiado compuesto por tres miembros, la mayoría la constituyen dos de sus integrantes. Argumenta,

---

[1]Es menester destacar la diferencia entre los términos mayoría y quórum. Por un lado, el concepto mayoría es un término comúnmente utilizado en el procedimiento parlamentario para referirse a la cantidad de personas requeridas a favor de algo para su aprobación. En términos muy sencillos, mayoría es más de la mitad. R.B. Bothwell, Manual de Procedimiento Parlamentario, Editorial de la Universidad de Puerto Rico, San Juan, 2da ed., 1994, pág. 6. Por otro lado, quórum se refiere a la cantidad mínima de personas presentes en una reunión para que ésta sea válida y legal. Véase C. E. Carrión, Manual Sencillo de Reglas Parlamentarias, Publicaciones Puertorriqueñas Inc., 2da ed., San Juan, 2000, pág. 41. De igual forma, el profesor Bothwell opina que el quórum es el número mínimo de miembros presentes en la asamblea exigido para que pueda hablarse a nombre de la totalidad o pueda expresarse oficialmente. R.B. Bothwell, *supra*, págs. 10-11. En resumen, "quórum" se refiere al número de personas requeridas para que un cuerpo colegiado pueda reunirse a deliberar válidamente, mientras que "mayoría" se refiere al número de votos necesarios para que una decisión sea válida.

pues, el F.E.I. que ese sería el número de votos necesarios para la validez de las determinaciones del Panel.[2]

**Examinados los argumentos presentados, somos del criterio que –en efecto– si el legislador hubiese querido establecer un requisito adicional al requisito de mayoría para las decisiones del Panel, como lo sería exigir un quórum mínimo, así lo pudo haber dispuesto al aprobar la Ley Núm. 2, *supra*.** De hecho, resulta pertinente destacar que el legislador ha hecho este tipo de precisión (incluyendo un requisito de quórum mínimo) al aprobar las leyes orgánicas de otros organismos gubernamentales colegiados.

Ejemplo de lo anterior son la Comisión de Investigación, Procesamiento y Apelación (CIPA), la Comisión de Relaciones del Trabajo del Servicio Público, la Junta de Planificación, la Comisión Apelativa de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Servicio Público, cuyas leyes orgánicas establecen expresamente cuál

---

[2] A modo ilustrativo, este Tribunal, el cual funciona como un cuerpo colegiado, al enfrentarse con la pregunta de si tiene jurisdicción para resolver un caso aun cuando su composición sea menor a la dispuesta en la Constitución del Estado Libre Asociado de Puerto Rico, resolvió en la afirmativa. En Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 392 (1985), el Tribunal determinó que la composición de cinco jueces establecida en nuestra Constitución no es un requisito jurisdiccional para la adjudicación de controversias. Según el referido precedente, el único requisito para disponer de una controversia por parte de este Tribunal es la concurrencia de la mayoría de los miembros que participen en la decisión. La única excepción es la declaración de inconstitucionalidad de una ley, en cuyo caso la Constitución establece un requisito de mayoría absoluta. Al disponer del caso el Tribunal expresó que resolver de otra forma sería dejar a la Rama Judicial a merced de los poderes ejecutivo y legislativo. Véase Sánchez Rodríguez, *supra*, págs. 394-396.

es el quórum necesario para sus acuerdos. En el caso de la CIPA, su ley orgánica dispone que constituirán quórum para tomar acuerdos tres de los cinco comisionados que componen el organismo. 1 L.P.R.A. sec. 173. En cuanto a la Comisión de Relaciones del Trabajo, la cuál se compone de un Presidente y dos miembros asociados, el requisito de quórum para sus determinaciones son dos de sus miembros. 3 L.P.R.A. sec. 1452r. Por su parte, la Ley Orgánica de la Junta de Planificación establece como requisito de quórum la presencia de la mayoría de los miembros de la Junta o de una sala. 23 L.P.R.A. sec. 62h.

De igual forma, el legislador dispuso expresamente que constituirán quórum para las determinaciones de CASARH dos de sus tres miembros. 3 L.P.R.A. sec. 1468f. Así también, al crear la Comisión de Servicio Público, la Asamblea Legislativa se expresó en términos específicos en cuanto al requisito de quórum para las determinaciones de dicha agencia. Sobre el particular, la Ley del Servicio Público establece que constituirán quórum para una sesión de la Comisión en pleno tres miembros, mientras que cuando la Comisión está dividida en salas constituirán quórum dos de los comisionados. 27 L.P.R.A. sec. 1053.

No obstante, en otras ocasiones, como ocurre en el caso de autos, el legislador ha establecido un requisito de mayoría sin hacer referencia a requisito de quórum alguno. Ejemplo de ello es la Junta de Calidad Ambiental, cuya ley orgánica se limita a disponer que sus acuerdos o determinaciones se

tomarán con el voto afirmativo de **la mayoría** de sus miembros. (Énfasis nuestro) 12 L.P.R.A. sec. 8002. De igual forma, la Ley Orgánica de la Junta de Libertad bajo Palabra dispone que los acuerdos de la Junta deben ser adoptados por mayoría. 4 L.P.R.A. sec. 1501.[3] Ninguna de estas leyes establece un requisito de quórum para los organismos en cuestión, por lo que las decisiones de éstos son válidas siempre y cuando cumplan con el requisito de mayoría dispuesto en su ley orgánica.

A modo comparativo, en la jurisdicción federal el Tribunal Supremo de los Estados Unidos se enfrentó a una controversia muy similar a la de autos en Federal Trade Commission v. Flottil, 389 U.S. 179 (1967). En dicho caso, la Comisión Federal de Comercio (F.T.C., por sus siglas en inglés) en votación de dos a uno, emitió una orden de cese y desista en contra de una corporación. En la deliberación sólo participaron tres de los cinco comisionados del F.T.C., debido al retiro de los otros dos comisionados antes de que la agencia emitiera la decisión.

La Corte de Apelaciones de los Estados Unidos para el Segundo Circuito revocó la orden emitida por la F.T.C., al concluir que la misma era inválida, toda vez que no contó con la concurrencia de al menos tres comisionados. No obstante,

---

[3] Dicha Junta puede funcionar en paneles de tres miembros. En esos casos, los referidos paneles sólo podrán constituirse con la totalidad de sus miembros y sus acuerdos serán adoptados por unanimidad. Véase Ley Orgánica de la Junta de Libertad Bajo Palabra, supra.

el Tribunal Supremo Federal revocó dicha determinación.  El Máximo Foro Federal fundamentó su decisión en una antigua norma del *common law* que establece que, **en ausencia de una disposición estatutaria sobre el quórum mínimo requerido, es suficiente la concurrencia de una mayoría simple de los miembros de un cuerpo colegiado para que dicho cuerpo pueda actuar válidamente**. (Énfasis nuestro) Véase <u>Federal Trade Commission v. Flotill</u>, *supra*.

Esta norma ha sido reiterada por los tribunales federales. Así, a modo de ejemplo, en <u>Assure Competitive Transp. v. U.S.</u> 629 F.2d 467 (7mo Cir. 1980), se validó una decisión de la Comisión de Comercio Interestatal tomada con la participación de sólo cinco de sus once miembros. La Corte de Apelaciones para el Séptimo Circuito fundamentó su determinación en la decisión tomada por el Tribunal Supremo Federal en <u>Federal Trade Commission v. Flotill</u>, *supra*, y en la antigua norma del *common law* allí acogida. De igual forma, en <u>Ho Chong Tsao v. Immigration and Naturalization Service</u>, 538 F.2d 667 (5to Cir. 1976), la Corte de Apelaciones de los Estados Unidos para el Quinto Circuito validó una orden de deportación emitida por la Junta Apelativa de Inmigración, a pesar de las alegaciones del peticionario de que la decisión era inválida por haber sido tomada por sólo tres de los cinco miembros de la referida junta. La corte determinó que una mayoría simple de los miembros de la Junta estaba autorizada a actuar en nombre de dicho organismo gubernamental.

Varios tribunales estatales en Estados Unidos también han seguido y citado con aprobación la referida norma. En David Levinson et al. v. Connecticut Board of Chiropractic Examiners at al, 560 A.2d 403 (1989), la Corte Suprema de Connecticut validó la decisión de la Junta Examinadora de Quiroprácticos de ese estado de suspenderle la licencia a dos quiroprácticos por conducta impropia. Fundamentándose en la norma de Federal Trade Commission v. Flotill, *supra,* el máximo foro judicial del estado de Connecticut concluyó que dos miembros de la Junta constituían la mayoría requerida y que éstos tenían autoridad para actuar en nombre del organismo compuesto por tres miembros. Igual curso de acción han seguido las cortes supremas y de apelaciones  de otros estados.[4]

Ciertamente, la antigua norma del *common law* utilizada por los tribunales federales y los tribunales de varios estados para resolver controversias similares a la de autos es equiparable a la norma de interpretación estatutaria que, en esencia, postula que si la letra de la ley es clara, dicha letra debe ser respetada por ser la mejor expresión de la intención legislativa. En el caso de autos, si el legislador se limitó a requerir que las decisiones sean tomadas por

[4] Entre ellos se encuentran los estados de Alaska, Massachusetts, California y Alabama. Véase Alaska Federation for Community Self-Reliance, et al v. Alaska Public Utilities Commission, 879 P.2d 1015 (Alaska, 1997); Osberg v. Planning Board of Sturbridge, 687 N.E.2d 1274 (Massachusetts, 1997); Stanson v. San Diego Coast Regional Commission, 161 Cal. Rptr. 392 (California, 1980); Mann v. Houston Key, et al, 345 So.2d 293 (Alabama, 1977).

mayoría —pudiendo haber incluido un requisito de quórum mínimo como ha hecho en otros estatutos orgánicos de organismos colegiados— debemos interpretar que su intención fue establecer dicho criterio como el único requisito para tomar tales determinaciones y que, por tanto, no fue su intención requerir la presencia de todos los miembros del Panel para que éste pueda actuar válidamente.

Si bien la Ley Núm. 2, *supra*, provee para el nombramiento de dos miembros alternos, de forma que éstos se integren al panel en caso de que cualquier miembro en propiedad se tenga que inhibir o por cualquier otra circunstancia no pueda desempeñar sus funciones, el estatuto no contempla situaciones en que surjan vacantes en el Panel, como ocurrió en el caso de autos. Por ello, acoger la interpretación del Tribunal de Apelaciones de que la referida disposición es señal de la intención del legislador de que el Panel siempre estuviese constituido por tres miembros para poder actuar válidamente, no sería cónsono con la letra de la ley, ni la política pública establecida por la Asamblea Legislativa de asegurar un foro neutral que dilucide posibles actos delictivos de funcionarios públicos. Además, supondría un requisito adicional para la validez de las decisiones del Panel no contemplado en la ley.

A la luz de lo anterior, concluimos que la determinación de designar al licenciado López Cintrón como F.E.I para investigar la querella presentada en contra de la señora Torres Santiago fue una decisión válida que cumplió con el

requisito de mayoría establecido en la Ley Núm. 2, *supra*. De esta forma, rechazamos el argumento esbozado por la peticionaria a los efectos de que la vacante surgida en el Panel, tras la renuncia de la licenciada Iagrossi Brenes, privó a dicho cuerpo de autoridad para actuar sobre el referido hecho en su contra por el Secretario de Justicia.

Resolver de otra forma tendría el efecto de privar a dicho organismo de toda autoridad cuando ocurra un impasse entre el Ejecutivo y el Legislativo para llenar cualquier vacante surgida en el Panel. Ello a pesar de la política pública que motivó la aprobación de la Ley Núm. 2, *supra*, y la clara intención legislativa de crear un foro neutral e independiente para dilucidar supuestos actos indebidos atribuibles a funcionarios públicos y, además, proveerle a funcionarios honestos un medio efectivo para preservar su integridad y reputación. Véase Exposición de Motivos, Ley Núm. 2, *supra*.

## IV

En vista de todo lo anterior, se revoca el dictamen emitido en este caso por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Peticionario

       v.                               CC-2007-0847   Certiorari

Adaline Torres Santiago

   Recurrida

SENTENCIA

San Juan, Puerto Rico a 8 de diciembre de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen emitido en este caso por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                        CC-2007-847

Adaline Torres Santiago

    Recurrida

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 8 de diciembre de 2008

Disiento de la decisión que hoy anuncia este Tribunal por entender que la misma es errónea al obviar el texto claro de la ley que creó la Oficina del Panel del Fiscal Especial Independiente (el Panel). Error, que irremediablemente oboca al Tribunal a su desafuero.

Está ante la consideración de este Tribunal si es válida la designación de un Fiscal Especial Independiente (FEI) por un Panel constituido por dos miembros en propiedad y un puesto vacante. La ponencia responde a dicha interrogante en la afirmativa tras concluir que, ante la ausencia de un requisito de *quórum* en la Ley Núm. 2 de 23 de febrero de 1988, 3 LPRA sec. 99h *et*

*seq* ("Ley núm. 2"), sólo se requiere que la designación de un FEI esté avalada por la mayoría. Como consecuencia, rechaza que se requiera la presencia de todos los miembros del Panel para que éste pueda actuar válidamente. Por otra parte, afirma que la disposición de ley que provee para el nombramiento de dos miembros alternos no aplica al caso de puestos vacantes, sino que se limita a situaciones en que un miembro en propiedad esté impedido de participar. Se advierte en la opinión que un resultado contrario privaría al Panel de autoridad ante un *impasse* en nombramientos entre el Ejecutivo y el Legislativo.

Lo cierto es que la mayoría soslaya el verdadero problema que encierra este caso, a saber: si en efecto hay un Panel del FEI válidamente constituido, lo que es un problema de interpretación estatutaria sobre cómo éste se constituye. Por las razones que paso a detallar, soy del criterio que evaluada pausadamente la ley que crea la Oficina del Panel del Fiscal Especial Independiente así como las expresiones del legislador al aprobarla, **la conclusión jurídica** tiene que ser que la ley exige que el Panel del FEI esté integrado por la totalidad de sus miembros al momento de tomar sus determinaciones.[5]

### I

La correcta solución de la controversia que nos convoca requiere que ejerzamos nuestra función

---

[5] Los hechos de este caso están resumidos en la ponencia suscrita por la mayoría por lo que es innecesario resumirlos nuevamente.

interpretativa. Al así proceder, recordamos que nuestra función en este tenor es la de interpretar el estatuto como un ente armónico, confiriéndole a sus disposiciones un sentido lógico y supliendo deficiencias cuando ello sea necesario. *Ranger American of P.R., Inc. v. Loomis Fargo & Co. of Puerto Rico*, res. 19 de junio de 2007, 171 DPR ___, 2007 TSPR 127; *Departamento de Hacienda v. Telefónica*, 164 DPR 195 (2005). Además, "[los] artículos de una ley deberán interpretarse los unos por los otros, atribuyendo a los dudosos el sentido que resulte del conjunto de todos." J.M. Manresa, *Comentarios al Código Civil Español*, 5ta ed., Madrid, Ed. Reus, 1924, T.I, pág. 78. Debemos asegurarnos siempre que el resultado a que llegamos sea uno cónsono con el propósito que animó al legislador al aprobar la ley que interpretamos. *Zambrana v. ELA*, 129 DPR 740, 749 (1992).

En este caso, como ya hemos indicado, nos corresponde interpretar las disposiciones relacionadas a la composición del Panel del FEI y el número mínimo de miembros necesario para sostener sus designaciones de los fiscales especiales independientes.

La sección 99q de la Ley núm. 2 dispone, en lo pertinente, como sigue:

> (1) El Gobernador de Puerto Rico designará con el consejo y consentimiento de la mayoría del número total de los miembros que componen el Senado y la Cámara de Representantes del Estado Libre Asociado de Puerto Rico, **un Panel integrado por tres (3) miembros en propiedad** con experiencia en el campo de derecho penal, los cuales serán seleccionados de entre los ex jueces del Tribunal Supremo, del Tribunal de Circuito de Apelaciones, o del Tribunal de Primera Instancia. **El Gobernador también designará,** de la misma

forma, de entre los ex jueces del Tribunal Supremo, del Tribunal de Circuito de Apelaciones o del Tribunal de Primera Instancia **dos (2) miembros alternos que formarán parte del Panel en caso de inhibición o de alguna otra circunstancia que impida a cualquier miembro en propiedad desempeñar sus funciones.** Los miembros en propiedad designarán de entre ellos un presidente del Panel.

. . .

(5) Las **decisiones del Panel** se tomarán por mayoría…. (Énfasis nuestro.)

Somos del criterio que de este lenguaje se desprende con claridad que la intención del legislador fue idear un Panel **constituido** por tres miembros. De ahí que la ley ordene que el Panel esté "**integrado** por tres (3) miembros en propiedad…." (Énfasis nuestro.) Por integración debemos entender, la "[c]onstitución de un todo reuniendo sus partes." M. Ossorio, *Diccionario de Ciencias Jurídicas*, Políticas y Sociales, 30ª ed., Buenos Aires, ed. Heliasta, 2004, pág. 501. Véase además, *Diccionario esencial de la lengua española*, Madrid, Real Academia Española, 2006, pág. 833 (integrar: "1. Dicho de las partes: Constituir un todo… 2. **Hacer que alguien o algo pase a formar parte de un todo**….") (Énfasis nuestro.) Es decir, los tres exjueces que se nombran pasan a formar parte de un todo y ese todo es el Panel. La mayoría del Panel, entonces, es quien toma las determinaciones del cuerpo.[6] Véase, 3 LPRA sec. 99q(5).

---

[6] La conclusión de la mayoría de los integrantes de este Tribunal nos parece irrazonable. Por un lado, hace superfluo el requerimiento de ley de que el Panel esté integrado por tres exjueces, pues bastaría que se nombraran solo dos para que el Panel pueda operar válidamente. Por

A ello abona también la disposición de la ley que establece que el Gobernador deberá nombrar a dos miembros alternos para formar parte del Panel en casos de inhibición o de alguna otra circunstancia que impida a uno de los miembros en propiedad desempañar sus funciones. Si el Panel pudiese operar con solo dos miembros en propiedad como concluye la mayoría, no era necesario crear la figura del miembro alterno. Esta disposición supone que para operar el Panel del Fiscal Especial Independiente debe estar integrado por tres personas. Una interpretación integrada de las exigencias de la sección 99q de la Ley núm. 2, nos lleva a concluir que la intención legislativa fue que el Panel estuviese siempre integrado por la totalidad de sus miembros al tomar sus determinaciones. En vista de ello, somos del criterio que una determinación tomada por un Panel que no esté constituido por tres exjueces es, necesariamente, inoficiosa.

El historial legislativo de esta ley apunta también en esta dirección. Así, durante la discusión del proyecto de ley que crearía la Oficina del Fiscal Especial Independiente en la Cámara de Representantes, el Representante señor José Varela Fernández expresó lo siguiente:

---

otro lado, nos preguntamos, ¿si el Panel puede estar integrado solamente por dos exjueces cuál es mayoría de dos? Recordemos que la ley exige que las determinaciones del Panel se tomen por mayoría. ¿O es que en este caso mayoría es sinónimo de unanimidad? Éstas son sólo algunas de las interrogantes que suscita la ponencia que hoy se avala y para las cuales no se ofrece respuesta satisfactoria.

> Sr. Varela Fernández: Compañeros miembros de la Cámara de Representantes, está ante la consideración del Cuerpo este Proyecto que ha de establecer un panel sobre el Fiscal Especial que habrá de ser un mecanismo eficaz para garantizar la objetividad en las investigaciones de los altos funcionarios del Gobierno de Puerto Rico. Históricamente nuestro pueblo se ha distinguido porque sus reidores públicos siempre se distinguen por su honradez, por su integridad. En ocasiones este historial ha sido mancado por servidores inescrupulosos, y esto, claro está, afecta la imagen de los servidores públicos. A través de este Proyecto estamos creando un panel nombrado por el Gobernador de Puerto Rico y **constituido por tres exjueces** del Tribunal Supremo, o del Tribunal Superior, y confirmados por la Cámara de Representantes y el Senado de Puerto Rico por la mayoría de sus miembros.

Sesión de la Cámara de Representantes de 29 de enero de 1998 sobre el sustitutivo del P. del S. 931, 10ma Asamblea Legislativa, 3ra Sesión Ordinaria, pág. 36.

Las expresiones del Representante Varela Fernández son indicativas de que el legislador siempre ideó al Panel como un cuerpo constituido por tres miembros. Nada en la discusión de este proyecto permite concluir lo contrario.

En virtud de lo anterior, soy del criterio que procede confirmar la determinación del Tribunal de Apelaciones que concluyó que al momento en que los miembros del Panel del FEI designaron un fiscal especial independiente para atender el referido hecho por el Departamento de Justicia respecto la conducta de la peticionaria, el Panel no se encontraba debidamente constituido por lo cual no tenía vida jurídica y su determinación era ineficaz. Ello no quiere decir, que una vez constituido conforme ordena la ley, el Secretario de Justicia pueda referirle nuevamente

el caso de la peticionaria a dicho cuerpo para que este descargue su encomienda conforme entienda corresponda.

So color de validar la política pública que encarna la Ley núm. 2, el Tribunal se adentra en lo que describe como un *impasse* político, es decir, un problema político partidista, para enmendar la Ley núm. 2 modificando sus requerimientos sobre cómo se conforma el Panel del Fiscal Especial Independiente. No podemos avalar con nuestro voto esta enmienda a la Ley núm. 2.

No hay duda, que una disputa político partidista entre la Rama Ejecutiva y la Asamblea Legislativa provocó que no se confirmaran los nombramientos remitidos por el Gobernador para formar parte del Panel del FEI. A ese insensato proceder, se le suma hoy la irreflexiva determinación de una mayoría de este Tribunal.

Anabelle Rodríguez Rodríguez

Juez Asociada